**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 15 Case** |
| **Fairfield Sentry Limited, et al.,** | ) | |
| | ) | **Case No. 10-13164 (SMB)** |
| Debtors in Foreign Proceedings. | ) | |
| | ) | **Jointly Administered** |
| **Fairfield Sentry Limited (In Liquidation), et al.,** | ) | |
| acting by and through the Foreign | ) | |
| Representatives thereof, | ) | |
| Plaintiffs, | ) | **Adv. Pro. No. 10-03496 (SMB)** |
| | ) | |
| -against- | ) | **Administratively Consolidated** |
| | ) | |
| **Theodoor GGC Amsterdam, et al.,** | ) | |
| Defendants. | ) | |
| **This Consolidated Reply Memorandum of Law applies to** | ) | |
| **the adversary proceedings listed on Appendix A hereto** | ) | |
| | ) | |

## CONSOLIDATED REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ............................................................................................................. 2

I.    The Court Lacks Subject Matter Jurisdiction over the Actions ............................ 2

    A.    Exercising "Related to" Jurisdiction Would Improperly Expand Chapter 15 .......... 3

    B.    There Is No Sufficient Federal Interest to Support "Related to" Jurisdiction .......... 5

    C.    Too Many Contingencies Exist to Support "Related to" Jurisdiction ...................... 6

II.    The Court Lacks Personal Jurisdiction over Foreign Defendants ........................ 8

    A.    Foreign Defendants Have Not Consented to Personal Jurisdiction ......................... 8

        1.    The Liquidators Are Estopped from Relying on the Forum Selection Clause . 8

        2.    The Forum Selection Clause Cannot Be Read to Apply to this Dispute .......... 9

    B.    The Liquidators Fail to Establish Any Other Basis for Personal Jurisdiction ......... 12

        1.    The Alleged Contacts Are Not Purposeful ..................................................... 12

        2.    None of the Claims "Arises out of" Any Jurisdictional Contact .................... 14

        3.    Exercising Personal Jurisdiction Would Be Unreasonable ............................. 16

III.    The Complaints Fail to State a Claim ............................................................... 17

    A.    Section 546(e) Applies and Bars All of the Claims ............................................. 17

        1.    Section 546(e) Precludes Avoidance of Foreign Transfers in Chapter 15 ...... 17

        2.    Comity Considerations Cannot Trump Express Statutory Mandates ............. 20

        3.    Section 546(e) Applies to All of the Claims ................................................... 21

    B.    The Common Law and Contract Claims Are Barred as a Matter of Law .............. 22

        1.    The Liquidators Are Precluded from Raising Citco's Bad Faith .................... 22

        2.    The Liquidators' Claims Fail Under BVI Law Even if Not Precluded .......... 29

        3.    The Court Should Also Dismiss the Declaratory Judgment Claims ............... 33

        4.    The Citco Subscribers' Purported Bad Faith Is Irrelevant ............................. 33

    C.    The Liquidators Fail to Allege Any Injury Arising from the Redemptions ........... 36

    D.    The BVI Insolvency Claims Fail as a Matter of BVI Law ...................................... 37

        1.    The Liquidators Cannot Use Hindsight to Show the Funds Were Insolvent .. 38

        2.    The Liquidators Cannot Rely on Hindsight to Show Insufficient Consideration ................................................................................................. 40

        3.    The Unfair Preference Claims Fail Because Defendants Were Not Creditors 40

4.      The Section 245 and 246 Defenses Bar the BVI Insolvency Claims ............. 42

5.      The Citco Subscriber Allegations Also Defeat the BVI Insolvency Claims .. 43

6.      This Court Cannot Grant Relief on the BVI Insolvency Claims ................... 44

IV.    Foreign Defendants Were Not Properly Served ................................................................ 46

A.      Foreign Defendants Did Not Consent to Privately-Dispatched Mail Service ......... 46

B.      The Subscription Agreement Does Not Permit Service by Illegal Means............... 47

C.      The Liquidators' Method of Service Was Not Independently Valid....................... 48

D.      The Liquidators Should Not Be Allowed Another Attempt at Service ................... 50

CONCLUSION.................................................................................................................................. 50

# <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

## <u>Rules and Statutes</u>

11 U.S.C. § 546(e) ........................................................................................... *passim*

11 U.S.C. § 561(d) ........................................................................................... 17

11 U.S.C. § 1509(b)(1) ..................................................................................... 5

11 U.S.C. § 1521(a)(7) ...................................................................................... 19

BVI Business Companies Act 2004 § 31 ........................................................... 30

BVI Insolvency Act § 245 ................................................................................. *passim*

BVI Insolvency Act § 246 ........................................................................... 16, 37, 40

BVI Insolvency Act § 249 .......................................................................... 33, 37, 44, 45

## <u>Cases</u>

*151 W. Assocs. v. Printsiples Fabric Corp.*,
61 N.Y.2d 732 (1984) ...................................................................................... 11

*Absolute Activist Master Value Fund, Ltd. v. Ficeto*,
No. 09 Civ. 8862 (GBD), 2013 WL 1286170 (S.D.N.Y. Mar. 28, 2013) ......... 15

*Adelphia Recovery Tr. v. FPL Grp. Inc. (In re Adelphia Commc'ns Corp.)*,
512 B.R. 447 (Bankr. S.D.N.Y. 2014) ............................................................. 38-39

*Adelphia Recovery Tr. v. Goldman, Sachs & Co.*,
748 F.3d 110 (2d Cir. 2014) ............................................................................. 8

*Albany Ins. Co. v. Banco Mexicano, S.A.*,
No. 96-9473, 1998 WL 730337 (S.D.N.Y. Oct. 19, 1998) ............................... 9

*Alfadda v. Fenn*,
966 F. Supp. 1317 (S.D.N.Y. 1997) ................................................................. 24, 25

*Allen v. McCurry*,
449 U.S. 90 (1980) .......................................................................................... 25

**Page(s)**

*Alter v. Bell Helicopter Textron, Inc.*,
944 F. Supp. 531 (S.D. Tex. 1996) ................................................................... 18

*Am. Nat'l Red Cross v. S.G.*,
505 U.S. 247 (1992) ......................................................................................... 5-6

*Ansell Healthcare, Inc. v. Maersk Line*,
545 F. Supp. 2d 339 (S.D.N.Y. 2008) .............................................................. 48

*Artache v. Goldin*,
133 A.D.2d 596 (2d Dep't 1987) ...................................................................... 47

*Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*,
480 U.S. 102 (1987) ......................................................................................... 16

*Ballard v. Tyco Int'l, Ltd.*,
No. CIV. 04-CV-1336-PB, 2005 WL 1863492 (D.N.H. Aug. 4, 2005) ........... 49

*Baur v. Veneman*,
352 F.3d 625 (2d Cir. 2003) ............................................................................. 36

*Bent v. Hearing Franchise LLC*,
15 Civ. 6555 (PAE), 2016 WL 153092 (S.D.N.Y. Jan. 12, 2016) ................... 12

*Berman v. Parco*,
986 F. Supp. 195 (S.D.N.Y. 1997) ................................................................... 34

*Bianco v. Erkins (In re Gaston & Snow)*,
243 F.3d 599 (2d Cir. 2001) ........................................................................ 22, 23

*Blazevska v. Raytheon Aircraft Co.*,
522 F.3d 948 (9th Cir. 2008) ........................................................................... 18

*Bondi v. Grant Thorton Int'l*,
322 B.R. 44 (S.D.N.Y. 2005), *aff'd in part, vacated in part sub nom.*
*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572 (2d Cir. 2011) ............... 3-4

*British Am. Ins. Co. v. Fullerton (In re British Am. Ins. Co.)*,
488 B.R. 205 (S.D. Fla. 2013) ........................................................................... 4

*Brockmeyer v. May*,
383 F.3d 798 (9th Cir. 2004) ....................................................................... 49, 50

**Page(s)**

*Broudy v. Mather*,
460 F.3d 106 (D.C. Cir. 2006) .................................................................. 29

*Burda Media, Inc. v. Viertel*,
417 F.3d 292 (2d Cir. 2005) ..................................................................... 46

*Chew v. Dietrich*,
143 F.3d 24 (2d Cir. 1998) ........................................................................ 14

*Clark v. City of Lakewood*,
259 F.3d 996 (9th Cir. 2001) .................................................................... 36

*CooperVision, Inc. v. Intek Integration Techs., Inc.*,
7 Misc. 3d 592 (Sup. Ct. Monroe Cty. 2005) ..................................... 9

*Coregis Ins. Co. v. Am. Health Found., Inc.*,
241 F.3d 123 (2d Cir. 2001) ..................................................................... 10

*Corporacion Venezolana de Fomento v. Vintero Sales Corp.*,
629 F.2d 786 (2d Cir. 1980) ..................................................................... 23

*Countrywide Banking Corp. Ltd. v. Dean*,
[1998] AC 338 ............................................................................................ 38

*Crane v. Poetic Prods. Ltd.*,
351 F. App'x 516 (2d Cir. 2009) ............................................................ 33

*Credit Suisse Sec. (USA) LLC v. Hilliard*,
469 F. Supp. 2d 103 (S.D.N.Y. 2007) .................................................... 10

*Criterium Capital Funds B.V. v. Tremont (Berm.) Ltd. (In re Kingate Mgmt. Ltd.)*,
784 F.3d 128 (2d Cir. 2015) ..................................................................... 18

*Crouse-Hinds Co. v. InterNorth, Inc.*,
634 F.2d 690 (2d Cir. 1980) ..................................................................... 31

*D.H. Blair & Co. v. Gottdiener*,
462 F.3d 95 (2d Cir. 2006) ........................................................................ 11

**Page(s)**

*Davis v. Masunaga Grp., Inc.*,
204 F. Supp. 2d 657 (S.D.N.Y. 2002),
*order vacated on reconsideration on other grounds*,
204 F. Supp. 2d 665 (S.D.N.Y. 2002).................................................................................. 10

*Donahue v. City of Bos.*,
304 F.3d 110 (1st Cir. 2002) .............................................................................................. 36

*Eastern Edye v. Robertson (Head Money Cases)*,
112 U.S. 580 (1884)............................................................................................................ 48

*Eli Lilly Do Brasil, Ltda. v. Fed. Express Corp.*,
No. 04 Civ. 5285, 2005 WL 2312547 (S.D.N.Y. Sept. 21, 2005),
*aff'd*, 502 F.3d 78 (2d Cir. 2007) ...................................................................................... 23

*Farnum Place, LLC v. Krys (In re Fairfield Sentry Ltd.)*,
No. 16-2127-bk, 2017 WL 2258282 (2d Cir. May 22, 2017)............................................ 21

*Feld v. Zale Corp. (Matter of Zale Corp.)*,
62 F.3d 746 (5th Cir. 1995) ............................................................................................... 6

*Fin. Indus. Ass'n v. United States*,
No. 6:10-cv-408-Orl-40KRS, 2014 WL 11444074 (M.D. Fla. Aug. 29, 2014)................ 6

*Fogerty v. Petroquest Res., Inc. (In re Condor Ins. Ltd.)*,
601 F.3d 319 (5th Cir. 2010) ............................................................................................. 4, 45

*Giannopoulos v. Iberia Lineas Aèreas de España, S.A.*,
17 F. Supp. 3d 743 (N.D. Ill. 2014) .................................................................................. 22

*Gilstrap v. Radianz Ltd.*,
443 F. Supp. 2d 474 (S.D.N.Y. 2006), *aff'd*, 233 F. App'x 83 (2d Cir. 2007)................... 44

*Hanna v. Plumer*,
380 U.S. 460 (1965)............................................................................................................ 24

*Hill v. HSBC Bank plc*,
207 F. Supp. 3d 333 (S.D.N.Y. 2016)................................................................................ 13, 14

*Hosking v. TPG Capital Mgmt., L.P. (In re Hellas Telecomms. (Lux.) II SCA)*,
526 B.R. 499 (Bankr. S.D.N.Y. 2015)............................................................................... 20

**Page(s)**

*Hurst v. Socialist People's Libyan Arab Jamahiriya*,
474 F. Supp. 2d 19 (D.D.C. 2007) ................................................................ 24

*In re Arab Bank, PLC Alien Tort Statute Litig.*,
808 F.3d 144 (2d Cir. 2015)......................................................................... 29

*In re Bancredit Cayman Ltd.*,
Bankr. No. 06-11026 (SMB), Adv. Pro. No. 08-1147,
2008 WL 5396618 (Bankr. S.D.N.Y. Nov. 25, 2008) ...................................... 5

*In re Bernard L. Madoff Inv. Sec. LLC*,
418 B.R. 75 (Bankr. S.D.N.Y. 2009)............................................................ 48

*In re Birting Fisheries, Inc.*,
300 B.R. 489 (B.A.P. 9th Cir. 2003)............................................................. 23

*In re Bluberi Gaming Techs., Inc.*,
554 B.R. 841 (Bankr. N.D. Ill. 2016) .............................................................. 5

*In re Bozel S.A.*,
549 B.R. 446 (Bankr. S.D.N.Y. 2016).......................................................... 50

*In re Coudert Bros. LLP*,
809 F.3d 94 (2d Cir. 2015)........................................................................... 30

*In re Edgewater Med. Ctr.*,
373 B.R. 845 (Bankr. N.D. Ill. 2007) ........................................................... 39

*In re Fairfield Sentry Ltd. Litig.*,
458 B.R. 665 (S.D.N.Y. 2011)............................................................... 3, 4, 5

*In re Fairfield Sentry Ltd.*,
No. 10 Civ. 7340, 2010 WL 4910119 (S.D.N.Y. Nov. 22, 2010) ...................... 6

*In re Morton*,
866 F.2d 561 (2d Cir. 1989)........................................................................... 7

*In re Nortel Networks, Inc.*,
469 B.R. 478 (Bankr. D. Del. 2012) ......................................................... 44-45

*In re OAS S.A.*,
533 B.R. 83 (Bankr. S.D.N.Y. 2015)............................................................... 5

**Page(s)**

*In re Optimal U.S. Litig.*,
865 F. Supp. 2d 451 (S.D.N.Y. 2012) ................................................................... 18

*Ins. Guar. Ass'n v. Pompelia (In re Pompelia)*,
560 B.R. 422 (Bankr. W.D. Pa. 2016) ................................................................... 7

*JCPL Leasing Corp. v. Treco (In re Treco)*,
227 B.R. 343 (Bankr. S.D.N.Y. 1998) ................................................................... 3

*Jones v. Bock*,
549 U.S. 199 (2007) ............................................................................................... 42

*Julien v. Williams*,
No. 8:10-CV-2358-T-24, 2010 WL 5174535 (M.D. Fla. Dec. 15, 2010) ........... 49

*Kim v. Co-op. Centrale Raiffeisen-Boerenleebank B.A.*,
364 F. Supp. 2d 346 (S.D.N.Y. 2005) ................................................................... 28

*Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*,
768 F.3d 239 (2d Cir. 2014) ......................................................................... 4, 20-21

*Kuenzle v. HTM Sport-Und Freizeitgeräte AG*,
102 F.3d 453 (10th Cir. 1996) ............................................................................... 16

*LaSala v. UBS, AG*,
510 F. Supp. 2d 213 (S.D.N.Y. 2007) ................................................................... 22

*Loginovskaya v. Batrachenko*,
764 F.3d 266 (2d Cir. 2014) ................................................................................... 41

*LT Game Int'l Ltd. v. DEQ Sys. Corp.*,
No. CIV. 2:13-4593 WJM, 2013 WL 5536195 (D.N.J. Oct. 7, 2013) ............... 49

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) ................................................................................... 6

*Martin v. N.Y. State Dep't of Mental Hygiene*,
588 F.2d 371 (2d Cir. 1978) ................................................................................... 50

**Page(s)**

*Maxwell Commc'n Corp. v. Societe Generale (In re Maxwell Commc'n Corp. plc),*
93 F.3d 1036 (2d Cir. 1996)................................................................. 21

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
84 F.3d 560 (2d Cir. 1996)................................................................. 16

*Montalbano v. Easco Hand Tools, Inc.,*
766 F.2d 737 (2d Cir. 1985)................................................................. 50

*Morrison v. Nat'l Austl. Bank Ltd.,*
561 U.S. 247 (2010)................................................................. 18, 19

*Motors Liquidation Co. Avoidance Action Tr. v. JPMorgan Chase Bank, N.A.*
*(In re Motors Liquidation Co.),*
565 B.R. 275 (Bankr. S.D.N.Y. 2017)................................................................. 14

*Norwest Fin., Inc. v. Fernandez,*
86 F. Supp. 2d 212 (S.D.N.Y. 2000)................................................................. 2

*Official Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*
*(In re Arcapita),*
549 B.R. 56 (S.D.N.Y. 2016)................................................................. 14

*Orr v. Kinderhill Corp.,*
991 F.2d 31 (2d Cir. 1993)................................................................. 43

*Paloian v. LaSalle Bank, N.A.,*
619 F.3d 688 (7th Cir. 2010) ................................................................. 39

*Papir v. Wurms,*
No. 02 CIV. 3273 (RCC), 2005 WL 372061 (S.D.N.Y. Feb. 15, 2005) ................................................................. 49

*Parklane Hosiery Co., Inc. v. Shore,*
439 U.S. 322 (1979)................................................................. 25

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.,*
639 F.3d 572 (2d Cir. 2011)................................................................. 3, 6

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.,*
671 F.3d 261 (2d Cir. 2012)................................................................. 30

**Page(s)**

*Peterson v. Enhanced Inv. Corp. (Cayman) Ltd. (In re Lancelot Inv. Fund, L.P.)*,
467 B.R. 643 (Bankr. N.D. Ill. 2012),
*aff'd sub. nom Peterson v. Somers Dublin Ltd.*, 729 F.3d 741 (7th Cir. 2013) .................. 21

*Peterson v. Ritchie Capital Mgmt., LLC (In re Lancelot Inv'rs Fund, L.P.)*,
No. 08 B 28225, 2012 WL 718631 (Bankr. N.D. Ill. Mar. 2, 2012) ................................. 40

*Pfizer Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co., Inc.)*,
676 F.3d 45 (2d Cir. 2012)................................................................................................. 7

*Phillips v. Brewin Dolphin Bell Lawrie Ltd.*,
[2001] 1 WLR 143 ......................................................................................................... 38, 39

*Picard v. Bureau of Labor Ins. (In re Sec. Inv'r Prot. Corp.)*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012)............................................................................... 13

*Picard v. Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*,
773 F.3d 411 (2d Cir. 2014).............................................................................................. 20

*Pizarro v. Hoteles Concorde Int'l, C.A.*,
907 F.2d 1256 (1st Cir. 1990)........................................................................................... 15

*Re Casa Estates (UK) Ltd.*,
[2014] 2 BCLC 49 ............................................................................................................. 38

*Ross v. Bank of Am., N.A.*,
524 F.3d 217 (2d Cir. 2008).............................................................................................. 37

*Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*,
No. 12 Civ. 1397 (LTS) (HBP), 2012 WL 4794450 (S.D.N.Y. Oct. 9, 2012) .................. 7

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
513 B.R. 222 (S.D.N.Y. 2014).......................................................................................... 18

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
Adv. P. No. 08-01789 (SMB), Adv. P. No. 11-02732 (SMB),
2016 WL 6900689 (S.D.N.Y. Nov. 21, 2016)................................................................... 45

*Seismic Reservoir 2020, Inc. v. Paulsson*,
785 F.3d 330 (9th Cir. 2015) ............................................................................................ 44

**Page(s)**

*Sempra Energy Trading Corp. v. Algoma Steel, Inc.*,
No. 00 CIV. 9227 (GEL), 2001 WL 282684 (S.D.N.Y. Mar. 22, 2001),
*aff'd*, 300 F.3d 242 (2d Cir. 2002) .................................................................... 9

*Shea Dev. Corp. v. Watson*,
No. 07 CIV. 11201 (DLC), 2008 WL 762087 (S.D.N.Y. Mar. 24, 2008) ......................... 12

*Sherwood Invs. Overseas Ltd., Inc. v. Royal Bank of Scot. N.V.*
*(In re Sherwood Invs. Overseas Ltd., Inc.)*,
No. 6:10-bk-584-KSJ, 2006 WL 5719450  (M.D. Fla. Sept. 30, 2016) ............................ 18

*Simmtech Co. v. Citibank, N.A.*,
No. 13-CV-6768 (KBF), 2016 WL 4184296 (S.D.N.Y. Aug. 3, 2016),
*appeal docketed*, No. 16-2994 (2d Cir. Aug. 29, 2016) ...................................... 23, 24

*Socline Corp. v. Podell*,
No. 93-1500, 1996 WL 109076 (S.D.N.Y. Mar. 12, 1996) ................................................ 9

*Somers Dublin Ltd A/C KBCS v. Monarch Pointe*,
HCVAP 2011/04 (Mar. 11, 2013) ....................................................................... 41

*Spizz v. Goldfarb Seligman & Co. (In re Ampal-Am. Isr. Corp.)*,
562 B.R. 601 (Bankr. S.D.N.Y. 2017) ............................................................... 18

*SPV OSUS Ltd. v. UBS AG*,
114 F. Supp. 3d 161 (S.D.N.Y. 2015), *appeal docketed*,
No. 16-2173 (2d Cir. June 24, 2016) ................................................................. 15

*Stanley v. TMK Finance Ltd.*,
[2010] EWHC 3349 ........................................................................................ 39

*State v. Saykao*,
No. 73250-1-I, 2016 WL 3190529 (Wash. App. June 6, 2016) ........................................ 32

*Stone v. Freeman*,
298 N.Y. 268 (1948) ...................................................................................... 47

*To v. HSBC Holdings PLC*,
No. 15-CV-3590 (LTS), 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) .............................. 13, 14

**Page(s)**

*Volkswagenwerk Aktiengesellschaft v. Schlunk,*
486 U.S. 694 (1988)..................................................................................... 48

*Walden v. Fiore,*
134 S. Ct. 1115 (2014).................................................................................. 13

*Waldman v. Palestine Liberation Org.,*
835 F.3d 317 (2d Cir. 2016).......................................................................... 12

*Water Splash, Inc. v. Menon,*
No. 16-254, 2017 WL 2216933 (U.S. May 22, 2017)...................................... 49

*Wilton v. Seven Falls Co.,*
515 U.S. 277 (1995)...................................................................................... 33

*Yellowave Corp. v. Mana,*
No. 00 CIV. 2267 SAS, 2000 WL 1508249 (S.D.N.Y. Oct. 11, 2000)............................ 50

**Other Authorities**

4B Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 1134 (4th ed. 2017)..................................... 48

18B Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 4473 (2d ed. 2017)..................................... 25

*Enforcement of Judgments Abroad, Generally,*
3 Bus. & Com. Litig. Fed. Cts. § 21:109 (4th ed. 2016)................................... 7

Hague Convention, *Practical Handbook on the Operation of the Hague Convention of 15
November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil
or Commercial Matters* (2016) ........................................................................ 49

Ruggero J. Aldisert, *Logic for Lawyers: A Guide to Clear Legal Thinking*
(Nat'l Inst. for Trial Advocacy eds., 3d ed. 1997) ............................................ 31

Defendants,[1] by their attorneys listed on Appendix B hereto, submit this Consolidated

Reply Memorandum of Law in response to the Foreign Representatives' Memorandum of Law

in Opposition to Defendants' Consolidated Memorandum of Law ("Opposition" or "Opp.").

## PRELIMINARY STATEMENT

These Actions do not belong in this Court. As a threshold matter, the bounds of subject

matter jurisdiction cannot be stretched to allow the Liquidators to substitute their ancillary

Chapter 15 case for their main proceeding in order to bring claims they lost or are afraid to bring

in the BVI. Furthermore, the Liquidators have not established personal jurisdiction over the vast

majority of Defendants. The misguided assertion that Defendants consented to personal

jurisdiction here for claims "with respect to" the Subscription Agreement and the Funds gets the

Liquidators nowhere, including because they themselves have already acknowledged that their

claims arise solely out of the Funds' Articles.

In any event, all of the Liquidators' claims are barred by Sections 561(d) and 546(e) of

the Bankruptcy Code. The Liquidators concede that they are seeking to undo transfers that

constitute "settlement payments" made in connection with "securities contracts," and do not

deny that Section 546(e) thus precludes their few avoidance claims against domestic parties

involving domestic transfers. What the Liquidators fail to acknowledge, however, is that this

safe harbor provision, by its precise terms, applies to preclude *all* of their claims against *all*

Defendants, regardless of whether those claims involve foreign or domestic parties or transfers.

Because Section 546(e) only limits the ability of foreign representatives to seek relief in U.S.

courts and the power of U.S. courts to grant that relief, its application is inherently domestic and

not extraterritorial. Moreover, even if its application were viewed as extraterritorial, any

---

[1]    Capitalized terms not defined herein have the meaning ascribed in the Consolidated Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to Amend and in Support of Defendants' Motion to Dismiss, Adv. Pro. No. 10-03496 (SMB) (Bankr. S.D.N.Y. Jan. 13, 2017) (Dkt. No. 960) ("Consol. Br.").

presumption against extraterritoriality would be overcome by the explicit language in

Section 561(d), which reflects Congress's clearly expressed that Section 546(e) apply in the

circumstances presented here, *i.e.*, to foreign law claims that would interfere with securities

contracts, even if the property involved is located overseas.

Finally, even if the Court were to reach the underlying merits of these claims, it would

find they have none.[2]  Federal preclusion law (as well as BVI preclusion principles) prevents the

Liquidators from recycling the claims they lost in test cases in the BVI based on a purportedly

new argument they could and should have advanced there.  Even if that were not the case, the

claims fail under the logic of the Privy Council's holding, as well as BVI statutory, agency, and

general common law.  The Liquidators fare no better with their novel BVI statutory avoidance

claims, which are defective for numerous reasons, not least because they all depend on

impermissible hindsight and only a BVI court can award the relief the Liquidators seek.

## ARGUMENT

### I.    The Court Lacks Subject Matter Jurisdiction over the Actions

A Chapter 15 case is meant to be a "spoke" that lends assistance to the "hub" of a foreign

main liquidation proceeding—a spoke for marshaling assets located in the United States or for

seeking other relief that can only effectively be obtained in an ancillary forum.  Here, in contrast,

the Liquidators seek to turn Chapter 15 on its head, transforming their case into a new global hub

from which to sue any defendant to recover assets located in any country, based entirely on the

foreign law of the main proceeding.  This effort follows test cases in which the highest courts in

---

[2]    To the extent this Court needs to look to BVI law to address this subject, the Liquidators have offered no appropriate guidance.  The opinions of their purported expert—which often have little, if any, support in existing BVI law—are entitled only to minimal weight due to Mr. Moss's disclosure that he is acting as the Liquidators' advocate in the BVI on many of the same issues he purports to address here.  *See* Decl. of Gabriel Moss QC, dated Oct. 21, 2016 ¶ 1; Decl. of Gabriel Moss QC, dated March 30, 2017 ("Moss II") ¶ 2; *Norwest Fin., Inc. v. Fernandez*, 86 F. Supp. 2d 212, 228 n.15 (S.D.N.Y. 2000) (expert's "binding ethical duties" are "serious infirmities when deciding what weight to give his testimony").

2

the BVI rejected the Liquidators' attempts to obtain the very same relief they seek here.  This

Court cannot permit such an unprecedented abuse and expansion of Chapter 15.

In determining subject matter jurisdiction, the Court is bound by the District Court's prior

decision in this case, which forecloses any argument that "arising in" or "arising under"

jurisdiction exists here.  The Liquidators' contrary suggestion that this decision merely "concerns

the 'allocat[ion of] authority to enter final judgment between the bankruptcy court and the

district court,'" Opp. 20, is wrong.  Judge Preska was clear:  "The claims asserted do not 'arise

under' title 11.  They do not 'arise in' a title 11 case . . . .  *In addition*, an Article I court may not

adjudicate these claims to final judgment without violating the Constitution."  *In re Fairfield*

*Sentry Ltd. Litig.*, 458 B.R. 665, 688-89 (S.D.N.Y. 2011) (emphasis added).  Thus, the only

matter left for this Court is whether it has "related to" jurisdiction.  As shown below, it does not.

**A.  Exercising "Related to" Jurisdiction Would Improperly Expand Chapter 15**

Due to the fundamentally "limited nature" of Chapter 15, claims unrelated to preserving

or recovering property in the United States in aid of a foreign proceeding are "outside the ambit"

of bankruptcy courts' jurisdictional mandate.  *See JCPL Leasing Corp. v. Treco (In re Treco)*,

227 B.R. 343, 349-50 (Bankr. S.D.N.Y. 1998).  This territorial principle necessarily limits this

Court's jurisdiction in this Chapter 15 case.

The Liquidators' assertion that *Parmalat* "effectively precludes" this argument, Opp. 22,

is incorrect.  *Parmalat* dealt only with "related to" jurisdiction over an action seeking to recover

assets located in the United States.  *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d

572, 579 (2d Cir. 2011).  In finding such jurisdiction, the District Court in that case explained

that, although the bankrupt estate was being administered abroad, "a foreign estate may have

assets located in the United States or otherwise subject to the jurisdiction of the United States

courts."  *Bondi v. Grant Thornton Int'l*, 322 B.R. 44, 48 (S.D.N.Y. 2005), *aff'd in part, vacated*

3

*in part sub nom. Parmalat*, 639 F.3d 572. Indeed, the claims asserted there sought "to recover

some of those [U.S.] assets," and "it is undisputed that the purpose of any Section 304

proceeding . . . is to allow United States courts to assert control over such assets." *Id.*[3]

Similarly, the court in *British American Insurance* found "related to" jurisdiction over a foreign

representative's tort claims against U.S. defendants because, "[i]f successful, the plaintiff may

then pursue collection here in the United States and the resulting assets would be subject to

administration under Chapter 15." *British Am. Ins. Co. v. Fullerton (In re British Am. Ins. Co.)*,

488 B.R. 205, 224 (S.D. Fla. 2013); *see also Fogerty v. Petroquest Res., Inc. (In re Condor Ins.

Ltd.)*, 601 F.3d 319, 327 (5th Cir. 2010) (Chapter 15 was designed to prevent the "hid[ing of]

assets in the United States out of reach of [] foreign jurisdiction[s]").

However, neither *Parmalat*, *British American Insurance*, nor any other case that

Defendants have discovered addresses whether an action against foreign parties seeking only the

recovery of assets located outside the United States can give rise to "related to" jurisdiction. It

cannot. Here, as the District Court made clear, the Liquidators seek judgments with respect to

assets located outside the United States. *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. at 682 ("The

Plaintiffs' actions seek assets, so their location is relevant. Here, there are no assets in the United

States.").[4] A finding of "related to" jurisdiction over the Actions would allow the Liquidators to

transform this Court, in effect, into the debtors' main court, instead of respecting its limited role

---

[3]      *In re Treco* is entirely consistent with *Parmalat*, and, in fact, was cited by the District Court in *Bondi* for the proposition, repeated by the Second Circuit, that "[t]here is no reason why a state law action designed to recover [assets located in the United States] . . . is not 'related to' the Section 304 Proceeding" even if the bankrupt estate is foreign. *Bondi*, 322 B.R. at 48 & n.15 (cited in *Parmalat*, 639 F.3d at 579).

[4]      Judge Preska also already dispelled the notion that the Actions themselves constitute U.S. assets. *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. at 677 n.2 ("Here, the Plaintiffs are domiciled in the BVI, so the intangible assets are located there. . . . The only connection to the United States is the filing of the lawsuits here. . . . Plaintiffs may not manufacture jurisdiction by the expedient of filing a lawsuit in the United States."). Nor is *Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*, 768 F.3d 239 (2d Cir. 2014), to the contrary. There, the court held that Sentry's SIPA claims are U.S. property because the SIPA trustee is located in New York and the distributions on the SIPA claims could be attached or garnished in the United States. *Id.* at 245. Here, the Liquidators are located in the BVI and any recoveries they receive in these Actions are subject to attachment or garnishment *in the BVI.*

4

as an ancillary court with a mandate to "aid foreign jurisdictions . . . by preventing debtors from squirreling away assets in the United States." *Id.* at 686. This would constitute an impermissible expansion of the limited scope of Chapter 15 jurisdiction.[5]

### B.   There Is No Sufficient Federal Interest to Support "Related to" Jurisdiction

In enacting Chapter 15, Congress did not intend—nor did it have the constitutional power—to create "related to" jurisdiction for any and all actions brought by a foreign representative seeking monetary relief.[6]  Chapter 15 recognition alone cannot confer subject matter jurisdiction; instead, "[t]here must be an independent source of that authority." *In re Bluberi Gaming Techs., Inc.*, 554 B.R. 841, 849 (Bankr. N.D. Ill. 2016).

The Liquidators' reliance on *In re OAS S.A.*, 533 B.R. 83 (Bankr. S.D.N.Y. 2015), to suggest otherwise is misplaced. As the *OAS* court noted, Chapter 15's legislative history indicates that Congress enacted Section 1509 to provide foreign representatives with access to U.S. courts, *i.e.*, standing to sue. *Id.* at 99. The statute does not establish a basis for subject matter jurisdiction in any court. To the contrary, the fact that it provides that "the foreign representative has the capacity to sue and be sued in *a court* in the United States," 11 U.S.C. § 1509(b)(1), and does not specifically identify *federal courts*, indicates that Congress did not intend this provision to confer federal subject matter jurisdiction.[7]

---

[5]      The Liquidators cannot artificially divorce the holding in *In re Bancredit Cayman Ltd.* from subject matter jurisdiction. *See* Opp. 25 n.31. The *Bancredit* court clearly stated that Chapter 15 cannot be used to impermissibly expand the Court's power to "hear disputes with no connection to the forum."  Bankr. No. 06-11026 (SMB), Adv. Pro. No. 08-1147, 2008 WL 5396618, at *9 (Bankr. S.D.N.Y. Nov. 25, 2008).

[6]      While the Liquidators offer a supposed limiting principle to their overbroad interpretation by claiming that (i) personal jurisdiction must also be established over any defendants in a "related" action, and (ii) any such action must also have a "conceivable effect" on a foreign estate, these are meaningless boundaries. As Judge Preska made clear, "[s]ubject matter jurisdiction does not exist because personal jurisdiction exists." *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. at 678 n.3. Further, even assuming *arguendo* that there were a conceivable effect on the foreign estate, that would not be independently sufficient to satisfy the requirements of Article III of the U.S. Constitution (a question *Parmalat* did not consider).

[7]      *See, e.g.*, *Am. Nat'l Red Cross v. S.G.*, 505 U.S. 247, 255 (1992) (subject matter jurisdiction exists in cases involving a federally chartered entity authorized to "sue or be sued" only if the statute "specifically mentions the

The Liquidators' hollow Chapter 15 case is also insufficient, standing alone, to establish a federal interest to which the Actions can constitutionally be "related." "[A]s a dispute becomes progressively more remote from the concerns of the body of federal law claimed to confer federal jurisdiction over it, the federal interest in furnishing the rule of decision for the dispute becomes progressively weaker . . . .  For the bankruptcy court to have subject matter jurisdiction . . . some nexus must exist between the related civil proceeding and the Title 11 case." *Feld v. Zale Corp. (Matter of Zale Corp.)*, 62 F.3d 746, 752 (5th Cir. 1995).  In *Parmalat*—and in every case of which Defendants are aware in which a court has exercised Chapter 15 or Section 304 "related to" jurisdiction—the foreign representative brought the proceeding to protect or marshal assets in the United States, thus implicating an underlying source of federal law.  Here, in sharp contrast, the Liquidators' Chapter 15 case serves as little more than pretext to support "related to" jurisdiction over these Actions.

### C.  Too Many Contingencies Exist to Support "Related to" Jurisdiction

Even if the sole limiting factor in determining whether this Court has "related to" jurisdiction were the Actions' "conceivable effect" on the Funds' foreign estate, the Liquidators could not satisfy this test.[8]  Any impact this Court's opinions might have on that estate would be too remote to support jurisdiction.

Contrary to the Liquidators' assertions, this Court is limited to issuing what would be, at most, an advisory opinion with respect to the BVI Insolvency Claims.  *See infra* Part III.D.6.

---

federal courts"); *Fin. Indus. Ass'n v. United States*, No. 6:10-cv-408-Orl-40KRS, 2014 WL 11444074, at *5 (M.D. Fla. Aug. 29, 2014) (subject matter jurisdiction exists over suits to which SIPC is a party because its "'sue and be sued' clause [] specifically refers to the federal courts").

[8]    *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (the party "asserting subject matter jurisdiction has the burden of proving . . . that it exists") (citation omitted).  When the District Court noted in this case that "[a]ny recovery thus would accrue to the benefit of the Plaintiffs' bankruptcy estates," it was simply recounting the Liquidators' position, not making a finding of any sort.  *In re Fairfield Sentry Ltd.*, No. 10 Civ. 7340, 2010 WL 4910119, at *1 (S.D.N.Y. Nov. 22, 2010).  The Liquidators' reliance on this statement to establish a conceivable effect, Opp. 19, is therefore misplaced.

Even if the Court rules in favor of the Liquidators with respect to these claims, any final judgment would then be subject to *de novo* review in the BVI. *See id.* Indeed, the BVI Commercial Court itself has suggested that this Court's rulings may be given no effect in the BVI.[9] Any potential effect on the Funds' estate would plainly be "too far removed" to support jurisdiction. *Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*, No. 12 Civ. 1397 (LTS) (HBP), 2012 WL 4794450, at *2-3 (S.D.N.Y. Oct. 9, 2012).

Furthermore, even if the Liquidators, after litigating both here and in the BVI, obtain favorable, final judgments on any of their claims, they do not seriously dispute that they must then institute proceedings where Defendants' assets are located.[10] A favorable result in the Actions, then, would not give them "a now-existent legal right to utilize . . . assets," and they would need to rely on separate actions to realize any recovery.[11] "That this adversary proceeding may affect the bankruptcy estate at some point in the future only where two interceding events occur is not sufficient to have a conceivable effect on the bankruptcy case. This connection to the bankruptcy estate is simply too tenuous to constitute related-to jurisdiction." *Ins. Guar. Ass'n v. Pompelia (In re Pompelia)*, 560 B.R. 422, 426 (Bankr. W.D. Pa. 2016).

---

[9]     Specifically, Justice Leon explained: "If the U.S. Bankruptcy Court were to make, for example, declaratory determinations, presumably the office holder (the Liquidators) would need to apply to this Court under Section 249 if they wish this Court to make any of the types of discretionary orders available under the section. Upon such an application, this Court would need to be 'satisfied' that any transaction subject to such declaratory determination is a 'voidable transaction' and then would need to determine the appropriate relief from the options under Section 249. What this Court would need to do to be 'satisfied' remains to be determined, including the effect of the U.S. Bankruptcy Court's declaratory determination." Section 273 Judgment ¶ 122 (Hare Decl., Ex. S).

[10]     The Liquidators do not (and cannot) explain how they could enforce any judgment rendered by this Court without commencing individual proceedings in more than 30 overseas jurisdictions. Indeed, "litigant[s] seeking to enforce a judgment abroad must determine whether the judgment will be recognized and enforced in each jurisdiction where enforcement may be sought." *Enforcement of Judgments Abroad, Generally*, 3 Bus. & Com. Litig. Fed. Cts. § 21:109 (4th ed. 2016). The only case the Liquidators cite on this point, *In re Morton*, 866 F.2d 561 (2d Cir. 1989), discusses the renewal of judgment liens, not the initiation of enforcement proceedings, and thus is inapposite.

[11]     *See Pfizer Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co., Inc.)*, 676 F.3d 45, 54 (2d Cir. 2012) (citing Third Circuit precedent establishing that "related to" jurisdiction cannot lie where the court's decision will not finally determine the rights or obligations of parties and thus cannot affect the estate without further actions).

## II.    **The Court Lacks Personal Jurisdiction over Foreign Defendants**

### A.  **Foreign Defendants Have Not Consented to Personal Jurisdiction**

The Liquidators concede, as they must, that they can rely on the Forum Selection Clause only if it applies to these proceedings.  Opp. 6.  To meet their burden, the Liquidators urge this Court to ignore their prior contrary arguments in the BVI and to effectively rewrite the Forum Selection Clause to cover claims "related to" the "Fund Documents."  *Id.* 7-9.  The Court should not allow the Liquidators to reverse the position they successfully argued before Justice Bannister, nor should it rewrite the parties' unambiguous agreement.

### 1.  The Liquidators Are Estopped from Relying on the Forum Selection Clause

The Liquidators cannot avoid judicial estoppel by rewriting history.  Seven years ago, before Justice Bannister, the Liquidators argued that their "claims are not made on or in respect of [the Subscription] [A]greements" but are *only* "with respect to" the Articles, and thus do not implicate the Subscription Agreements' choice of law clause.  *See* Consol. Br. 26-27.  That argument was critical to successfully obtaining Justice Bannister's permission to serve (and thereby gain personal jurisdiction over) the defendants in 2011.  *See id.* 27.  Now, the Liquidators seek to make the exact opposite argument before this Court.  They would not be able to do this in the BVI, and they cannot do it here.  *See Adelphia Recovery Tr. v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014) (judicial estoppel "protect[s] the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment").[12]

---

[12]        The Liquidators' assertion that their argument before Justice Bannister involved *only* which law governed the claims, rather than whether the Forum Selection Clause should apply to the Actions, Opp. 9, is irrelevant.  The tactical reason for their position in the BVI is of no moment; what matters is that they took a position that contradicts their position here and succeeded in obtaining the relief they sought.

2.   The Forum Selection Clause Cannot Be Read to Apply to this Dispute

The Liquidators also get nowhere in arguing that the Subscription Agreement and the

Articles are a single, integrated contract for purposes of interpreting the Forum Selection Clause.

Courts have held that separate agreements form an "integrated contract" only when they were

executed "as part of the *same transaction*."  *Albany Ins. Co. v. Banco Mexicano, S.A.*, No. 96-

9473, 1998 WL 730337, at *2 (S.D.N.Y. Oct. 19, 1998) (emphasis added).  Here, the

Subscription Agreements (which govern the subscriptions) and the Articles (which govern the

redemptions) necessarily govern *different transactions*.  The agreements are also subject to

different governing laws.[13]  They therefore cannot constitute a single, "integrated" contract.

Nor is there any basis to conclude that an "independent provision of one [agreement],

such as a jurisdictional paragraph," should be incorporated into the other agreement.

*CooperVision, Inc. v. Intek Integration Techs., Inc.*, 7 Misc. 3d 592, 595-603 (Sup. Ct. Monroe

Cty. 2005) (citing *Kent v. Universal Film Mfg. Co.*, 200 A.D. 539, 550 (1st Dep't 1922) (forum

selection clause in one contract did not apply to a dispute involving a different but related

contract silent on choice of forum, even though the contracts referenced one another)).  When

two contracts govern the parties' relationship, courts analyze which contract is implicated by the

dispute to determine whether a forum selection clause in only one of them applies.[14]  Here, the

---

[13]      *See Socline Corp. v. Podell*, No. 93-1500, 1996 WL 109076, at *2 (S.D.N.Y. Mar. 12, 1996) (declining to import forum selection clause from contract governed by French law into another contract governed by Swiss law).

[14]      *See Sempra Energy Trading Corp. v. Algoma Steel, Inc.*, No. 00 CIV. 9227 (GEL), 2001 WL 282684, at *1, *5 (S.D.N.Y. Mar. 22, 2001) (forum selection clause in one contract did not apply to dispute arising under another contract between the same parties that had a choice of law provision but no choice of forum provision), *aff'd*, 300 F.3d 242 (2d Cir. 2002).

Liquidators' claims implicate solely the Articles—just as they argued in the BVI—and thus the

Forum Selection Clause does not apply.[15]

In any event, the Liquidators' claims do not concern the *subscriptions* for shares, but

rather the *redemptions* of those shares.  The Liquidators do not seek relief under the Subscription

Agreements, nor do Defendants rely on these agreements for their defense.  The only response

the Liquidators can muster is, in effect, a "but for" argument that the Subscription Agreement

leads investors to acquire shares and thereby become subject to the Articles.  That argument is

plainly inadequate under the Liquidators' own authorities.[16]  Once the shares are acquired, the

Subscription Agreement essentially becomes irrelevant to the ongoing relationship between the

shareholders and the Funds, which is governed by the Articles.

Moreover, contrary to the Liquidators' assertions, the only logical reading of the Forum

Selection Clause, which applies to "any suit, action or proceeding . . . with respect to this

[Subscription] Agreement *and* the Fund," is that "and" means "and."[17]  Indeed, the Liquidators

concede that the vast majority of courts have given "and" its plain conjunctive meaning under

New York law, and their own authority recognizes that the disjunctive reading of "and" is

---

[15]     *See Credit Suisse Sec. (USA) LLC v. Hilliard*, 469 F. Supp. 2d 103, 107-08 (S.D.N.Y. 2007) (rejecting "the argument that a forum selection clause in one contract should be applied to a different, separately negotiated contract lacking such a clause," even though both contracts concerned the very same securities).

[16]     *See, e.g.*, *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 131 (2d Cir. 2001) (claims were "'related to the Companies' financial failure by the very wording of the complaints, which explicitly refer to, discuss, and *seek redress for* that failure"); *see also Davis v. Masunaga Grp., Inc.*, 204 F. Supp. 2d 657, 665 (S.D.N.Y. 2002) (claims did not "arise out of or relate to" contract because they "[did] not have their source in any duty or relationship established by the contract, they do not involve interpretation of the agreement, and they would not share common operative facts with a breach of contract action, were plaintiff conceivably to bring one"), *order vacated on reconsideration on other grounds*, 204 F. Supp. 2d 665 (S.D.N.Y. 2002).

[17]     The Liquidators' clumsy "books with respect to biology and chemistry" analogy, Opp. 6, is a red herring. "Books" in their example is a plural noun, whereas the noun in the Forum Selection Clause that is modified by the phrase "with respect to" is a singular noun, a "Proceeding."  If a *single* "book with respect to biology and chemistry" were on a bookcase, that book would address *both* biology and chemistry, not one or the other.

disfavored.  *See* Opp. 6.[18]  Thus, the Forum Selection Clause only covers actions that are with

respect to *both* the Fund *and* the Subscription Agreement, such as disputes involving the

enforcement of the Subscription Agreement.  The Liquidators' reading would render the phrase

"this Agreement" superfluous.

Defendants' reading of the Forum Selection Clause makes practical sense as well.  For

example, if the Fund failed to issue shares to a party that signed the Subscription Agreement, that

party would have an action for breach of the Subscription Agreement that could be brought in

New York, as such an action would be "with respect to" *both* the Subscription Agreement *and*

the Fund.  Conversely, the Forum Selection Clause does not apply to actions that are with respect

to *only* the Fund but not the Subscription Agreement, such as these Actions.

Moreover, the Forum Selection Clause cannot be enforced with respect to all the

Liquidators' claims or against all Defendants.  As a statutory matter, the BVI Insolvency Claims

belong solely to the Liquidators, not the Funds, barring the Liquidators from relying on the

Forum Selection Clause in the Funds' Subscription Agreements with respect to those claims.

*See* Decl. of Simon Mortimore, QC, dated May 26, 2017 ("Mortimore II") ¶ 237.  Nor can the

Forum Selection Clause be enforced against those Defendants that the Liquidators do not allege

signed a Subscription Agreement.  As the Liquidators' authorities show, such a clause can be

enforced against a non-signatory only if it is closely related to—*i.e.*, an alter ego or affiliate of—

the signatory.  Opp. 11.  The Liquidators have alleged no such relationship here.  Paragraph 27

of the Subscription Agreement also does not help the Liquidators; they have not shown that "the

existence of the clause was reasonably communicated to the [non-signatory]," as is required.

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006).  Because there are no

---

[18]     The use of "and" to mean exactly that is not in the least ambiguous, but if it were, any ambiguity would be
resolved against the Liquidators.  *See 151 W. Assocs. v. Printsiples Fabric Corp.*, 61 N.Y.2d 732, 734 (1984).

allegations that any non-signatory Foreign Defendants "had access to the . . . Agreement at any time before it was signed" or "played a sufficiently substantial role in the . . . negotiations," the Clause cannot be used against them.[19]

### B.  The Liquidators Fail to Establish Any Other Basis for Personal Jurisdiction

The Liquidators' other threadbare allegations are insufficient to establish personal jurisdiction over Foreign Defendants.  *First*, the Liquidators allege nothing more than indirect and incidental contacts with the United States.  *Second*, the Liquidators have not pleaded any causal relationship between their claims and Foreign Defendants' alleged contacts, as none of their claims arises out of those alleged contacts.  *Third*, the exercise of personal jurisdiction over Foreign Defendants here would be unreasonable.

### 1.  The Alleged Contacts Are Not Purposeful

*First*, the Liquidators tacitly concede that Foreign Defendants' use of U.S. dollars is jurisdictionally irrelevant by choosing not to contest this point.  *See* Consol. Br. 30-31.

*Second*, Foreign Defendants' "intent" and "decision" to invest with BLMIS is, at most, an "indirect" jurisdictional contact because only Sentry, not any Foreign Defendant, directed its investments to New York.  That is plainly insufficient, as jurisdiction must be based on contacts "the Defendant *himself* creates."  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016).  The Liquidators' attempt to amplify this jurisdictionally irrelevant contact by concentrating on Foreign Defendants' purported "forum-related purpose" in investing in feeder funds that in turn would make other investments, Opp. 13, is unavailing.  The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by

---

[19]    *Shea Dev. Corp. v. Watson*, No. 07 CIV. 11201 (DLC), 2008 WL 762087, at *2 (S.D.N.Y. Mar. 24, 2008); *see also Bent v. Hearing Franchise LLC*, 15 Civ. 6555 (PAE), 2016 WL 153092, at *4 (S.D.N.Y. Jan. 12, 2016) (declining to enforce a forum selection clause because "the Court [could not] infer that it was foreseeable" for the forum selection clause to be enforced when the claims were not encompassed within the clause).

demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014). This is precisely what the Liquidators attempt: to establish contacts by Foreign Defendants based on *the Funds' own investments* in BLMIS.[20]

      *Third*, the Liquidators cannot establish a purposeful use of the U.S. banking system by pointing to Foreign Defendants' "choice" to invest in Sentry, which required the use of a U.S. correspondent account, rather than some other investment fund, such as Sigma or Lambda, that did not have any such requirement.[21] The purported "choice" to use U.S. banks was incidental to foreign investment contracts that were negotiated and performed entirely abroad. *See To v. HSBC Holdings PLC*, No. 15-CV-3590 (LTS), 2017 WL 816136, at *6-7 (S.D.N.Y. Mar. 1, 2017) (contact with U.S. banking system pursuant to foreign feeder fund service contracts does not support jurisdiction); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (same). As in *To* and *Hill*, Foreign Defendants' conduct was directed entirely toward their foreign counterparty, Sentry, which instructed them to send all subscription monies to Sentry's U.S. bank account. *See* Sentry Subscription Agreement at 1-2 (Moloney Decl., Ex. A). All of Foreign Defendants' conduct in the redemption process was performed and directed toward Sentry and its agents outside the United States. *See* Opp. 68-69.[22]

---

[20]      For the same reason, Judge Lifland's analysis in *Picard v. Bureau of Labor Ins.* (*In re Sec. Inv'r Prot. Corp.*), 480 B.R. 501 (Bankr. S.D.N.Y. 2012), where personal jurisdiction was based solely on the defendant's relationship with Sentry, has been superseded. That holding rested on the stream-of-commerce theory of jurisdiction that has since been rejected by the Supreme Court. *See* Consol. Br. 30; *see also Walden*, 134 S. Ct. at 1122 ("[T]he plaintiff cannot be the only link between the defendant and the forum. . . . [A] defendant's relationship with a plaintiff [*i.e.*, the Funds] or a third party [*i.e.*, BLMIS], standing alone, is an insufficient basis for jurisdiction."). Moreover, this theory of jurisdiction, even if it were valid, could not apply to the investment of money, which is fungible and incapable of causing injury by itself. Exercising jurisdiction based on a decision to make U.S. dollar investments would dramatically and impermissibly expand personal jurisdiction. *See* Consol. Br. 31 n.25.

[21]      The Liquidators concede that this purported contact applies only to "Sentry Defendants," and thus could not support personal jurisdiction over Foreign Defendants from whom the Liquidators seek to recover redemption payments made by Sigma or Lambda. *See* Consol. Br. 31 n.27, Exs. B-2, B-3.

[22]      The Liquidators' attempt to distinguish *To* and *Hill* is unavailing. In those cases, foreign parties knowingly entered into a foreign contract that required the use of U.S. bank accounts, and the fact that these contracts were

*Official Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank (In re Arcapita)*, 549 B.R. 56 (S.D.N.Y. 2016), does not compel a different conclusion.  Unlike the *Arcapita* defendants, which unilaterally chose and dictated to their foreign counterparties the use of U.S. accounts, Foreign Defendants' use of U.S. bank accounts was incidental to their foreign investment contracts and was dictated by the Funds.  At most, Foreign Defendants were "mere participants" in the selection of U.S. correspondent accounts, which even the *Arcapita* court suggested would not support personal jurisdiction.[23]  The Liquidators' reliance on *Motors Liquidation Co. Avoidance Action Tr. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 565 B.R. 275 (Bankr. S.D.N.Y. 2017), is equally misplaced.  There, a foreign defendant entered into a contract with a New York-based bank to receive loan payments here.  *Id.* at 288-89.  The contact with the U.S. banking system in *Motors* was thus direct and purposeful; the defendant was not a "mere participant" (like Foreign Defendants here) because it contracted directly with a New York bank.  *Id.*  The Liquidators have failed to establish any such purposeful contact by Foreign Defendants with the United States.

### 2.  None of the Claims "Arises out of" Any Jurisdictional Contact

The alleged U.S. contacts on which the Liquidators rely are also inadequate because they have no causal relationship to the Funds' alleged injuries, as due process requires.  *See Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998).  Because Foreign Defendants have "only limited contacts" with the United States, jurisdiction is properly exercised only "if the plaintiff's injury was *proximately* caused by [those] contacts."  *Id.* (emphasis added).  Here, the alleged contacts— namely, Foreign Defendants' decision to invest money with the Funds and the fact that

---

performed entirely abroad rendered the use of U.S. accounts entirely incidental, not purposeful, and thus jurisdictionally insignificant.  *See To*, 2017 WL 816136, at *6; *Hill*, 207 F. Supp. 3d at 339-40.

[23]    *See In re Arcapita*, 549 B.R. at 69, 71 ("Had the record demonstrated that [Sentry], as opposed to [Foreign Defendants], selected the U.S. dollar and the New York accounts to effectuate the Placements, [Foreign Defendants]' contacts with the United States would have been adventitious, and jurisdiction would not have lied.").

redemption money was processed by a U.S. bank account before it was ultimately received abroad by the Sentry Defendants—did not cause, proximately or otherwise, the Funds any injury.

*First*, the Liquidators allege that the Funds' injuries were proximately caused by Madoff, who "misused and misappropriated" the money the Funds invested in BLMIS, PAC ¶ 34, and, allegedly, by Citco, which purportedly turned a blind eye to Madoff's fraud, *id.* ¶ 42—not by Foreign Defendants' decision to invest in the Funds or their use of U.S. bank accounts.[24] The touchstone of proximate cause is the reasonably foreseeable risk of harm.[25] Here, the Funds' alleged injuries were not the reasonably foreseeable consequences of Foreign Defendants' investment decisions or use of U.S. bank accounts. Those actions thus were not a proximate cause of the Funds' alleged injuries, which arose long after, and many steps removed from, Foreign Defendants' decisions.[26] Those decisions fail to meet even the lower but-for cause standard, as is illustrated by the fact that *unredeemed* shareholders (whose interests the Liquidators purport to represent) made the exact same decisions but indisputably did not cause any alleged injury to the Funds. Such decisions thus have no causal significance to the Funds' alleged injuries and are therefore jurisdictionally irrelevant.

*Second*, Foreign Defendants' use of U.S. bank accounts also lacks any causal relationship with the Liquidators' claims. Sigma and Lambda allegedly suffered the exact same injuries as Sentry without their investors having used any U.S. bank accounts. The Funds "would have suffered the same injury even if none of [Foreign Defendants'] forum contacts had taken

---

[24]    *See Absolute Activist Master Value Fund, Ltd. v. Ficeto*, No. 09 Civ. 8862 (GBD), 2013 WL 1286170, at *12 (S.D.N.Y. Mar. 28, 2013) (manipulative trading, not fundraising trips to the United States to meet with investors, was proximate cause of fraud, despite plaintiff's argument that the fundraising trips "fueled the fraud").

[25]    *Pizarro v. Hoteles Concorde Int'l, C.A.*, 907 F.2d 1256, 1259-60 (1st Cir. 1990) (no personal jurisdiction where the forum-related contacts did not proximately cause the harm underlying the claims).

[26]    *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170 (S.D.N.Y. 2015) (attenuated but-for causation is not sufficient where forum-related contacts are sparse), *appeal docketed*, No. 16-2173 (2d Cir. June 24, 2016).

place,"[27] as the Funds were required to make the redemption payments regardless of the currency

or specific payment method that was employed.  Thus, the Liquidators' argument that their

claims would not exist had Foreign Defendants not used U.S. bank accounts to *receive* Sentry

redemption payments, Opp. 17, is factually wrong and legally irrelevant.

### 3.    Exercising Personal Jurisdiction Would Be Unreasonable

Foreign Defendants' alleged contacts with this forum arose from acts performed on

*foreign* soil pursuant to *foreign* contracts with the *foreign* Funds.  *See Asahi Metal Indus. Co. v.*

*Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 116 (1987).  The reasonableness factors,

which include "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2)

the interests of the forum state adjudicating the case; [and] (3) the plaintiff's interest in obtaining

convenient and effective relief," *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 573

(2d Cir. 1996) (citations omitted), all weigh against exercising personal jurisdiction here.

*First*, the fact that "none of [Foreign Defendants' or the Liquidators'] records, files, or

witnesses with information about the litigation are located" here "cuts slightly in favor of

[Foreign Defendants]," despite modern technology that may reduce the burden of litigating here.

*Id.* at 574.

*Second*, the Liquidators concede that the BVI has a greater interest in these Actions than

the United States, Opp. 65, as all of the relevant conduct occurred abroad and concerned

contractual relations governed by BVI law, *see id.* 68.  Indeed, the Liquidators argue that

"foreign interests, not U.S. interests, are by far predominant."  *Id.* 64.  Further, this case involves

questions of first impression under BVI law (*e.g.*, the interpretation of BVI Insolvency Act

Sections 245, 246, and 249) that U.S. courts have limited expertise and interest in resolving.

---

[27]    *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456-57 (10th Cir. 1996) (internal quotation marks and citation omitted); *see also SPV OSUS Ltd.*, 114 F. Supp. 3d at 170.

*Third*, and most importantly, the Liquidators are plainly not interested in "obtaining convenient and effective relief" in this forum. Despite having every opportunity to pursue their claims in the BVI, including actually litigating for years through every level of the BVI court system (and losing), the Liquidators instead discontinued those BVI Actions and chose to sue Foreign Defendants here, where they cannot obtain any relief for the reasons set forth in Part III.

## III.    The Complaints Fail to State a Claim

### A.  Section 546(e) Applies and Bars All of the Claims

The Liquidators do not contest that the redemption payments fall within the class of transactions that Section 546(e) renders immune from avoidance. They do not challenge that the Articles are "securities contracts" or that the payments themselves are "settlement payments." *See* Opp. 57-70. Instead, they argue only that Section 546(e) does not apply (i) in light of the presumption against extraterritorial application of U.S. law, or (ii) based on comity principles, and that (iii) even if the safe harbor applies, some claims survive. These arguments all fail.

#### 1.   Section 546(e) Precludes Avoidance of Foreign Transfers in Chapter 15

Sections 561(d) and 546(e), which must be read together, place a blanket limitation on the Court's power to grant avoidance relief with respect to "securities contracts" and "settlement payments" in Chapter 15 proceedings, regardless of whether the transfers that the foreign representatives seek to avoid are foreign or domestic in nature. *See* 11 U.S.C. § 561(d) (provisions "relating to securities contracts" must "apply in a case under Chapter 15" so as to "limit *avoidance powers*") (emphasis added). The question of whether limiting the Liquidators' avoidance powers here would require applying Section 546(e) extraterritorially is, at bottom, irrelevant, because the safe harbor applies regardless of how that question is answered.

Defendants do not seek an extraterritorial application of U.S. law. The cases cited by the Liquidators do not suggest otherwise, as they only address whether statutes that *create* federal

causes of action (such as a subsequent transfer claim) implicating foreign conduct (such as a

foreign transfer) could be brought in U.S. courts.[28]  By contrast, statutes that *preclude* claims

(such as Section 546(e)) regulate solely domestic conduct—namely, the ability of foreign

representatives to seek relief in U.S. courts and the power of U.S. courts to grant that relief.  *See*

*Alter v. Bell Helicopter Textron, Inc.*, 944 F. Supp. 531, 541 (S.D. Tex. 1996) (finding no

"authority which holds that a federal statute barring enforcement of claims in courts of the

United States bars only claims arising within the United States"); *Blazevska v. Raytheon Aircraft*

*Co.*, 522 F.3d 948, 954 (9th Cir. 2008) (applying *Alter* and holding that claim-precluding statutes

do not involve an extraterritorial application even if the underlying conduct giving rise to the

claim is foreign); *cf. Criterium Capital Funds B.V. v. Tremont (Berm.) Ltd. (In re Kingate Mgmt.*

*Ltd.)*, 784 F.3d 128, 132-33 (2d Cir. 2015) (Securities Litigation Uniform Standards Act can

preclude claims arising from foreign feeder fund investments, even if *Morrison* would preclude

plaintiffs' federal securities claims).

Because Sections 561(d) and 546(e), by their express terms, bar the Liquidators' requests

for relief in and from this Court, Defendants are not asking that those statutes be applied

extraterritorially.  By contrast, if Defendants sought an order from this Court to prevent the

Liquidators from bringing their claims before a BVI court, that would involve an extraterritorial

application of the statutes.  Under *Morrison*, this is the end of the analysis—and the presumption

against extraterritoriality does not limit the application of Section 546(e) here.[29]

---

[28]    *See Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010) (application of Rule 10b-5 to prosecute foreign fraudulent statements); *In re Optimal U.S. Litig.*, 865 F. Supp. 2d 451 (S.D.N.Y. 2012) (same); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 226-31 (S.D.N.Y. 2014) (application of Section 550(a) to recover foreign transfers); *Spizz v. Goldfarb Seligman & Co. (In re Ampal-Am. Isr. Corp.)*, 562 B.R. 601, 605 (Bankr. S.D.N.Y. 2017) (application of Section 547 to recover foreign transfers); *Sherwood Invs. Overseas Ltd., Inc. v. Royal Bank of Scot. N.V. (In re Sherwood Invs. Overseas Ltd., Inc.)*, Bankr. Ct. Case No. 6:10-bk-584-KSJ, 2006 WL 5719450, at *10-12 (M.D. Fla. Sept. 30, 2016) (application of Section 548 to recover foreign transfers).

[29]    Closing the door here is not only mandated by the plain meaning of Section 561(d), but is also consistent with the policy rationale underlying *Morrison*, which specifically addresses concerns that U.S. courts could become

There is no inconsistency between this conclusion and certain Defendants' contentions in

the BLMIS Trustee's litigation.  The issue there is whether a SIPA Trustee can recover foreign

transfers under Section 550(a)(2).  This case involves only Sections 561(d) and 546(e), which

limit the enforcement of foreign-law claims in a U.S. court, regardless of where the property is

located, and thus are not being applied extraterritorially.

Even if the application of Section 546(e) could be viewed as extraterritorial in light of the

foreign "component events" of the underlying redemption payments, Congress clearly intended

the statute to apply in the circumstances presented here.  Indeed, Section 561(d)'s incorporation

and mandatory application of Section 546(e) in Chapter 15 proceedings shows that Section

561(d) was designed to apply to preclude foreign law claims seeking to avoid certain foreign

transfers.  Because Chapter 15 bars foreign representatives from seeking avoidance relief under

U.S. law, *see* 11 U.S.C. § 1521(a)(7), Section 561(d) only has meaning if its incorporation of

Section 546(e) limits the relief U.S. courts can grant in Chapter 15 cases under foreign avoidance

law targeting protected transactions.  Section 561(d)—which provides that the safe-harbor

provisions shall apply in Chapter 15 to "limit avoidance powers to the same extent as in a

proceeding under Chapter 7 or 11 of this title"—therefore was intended to bar avoidance claims

based on foreign law to the same extent they would be barred if they were U.S. law-based

avoidance claims brought in a proceeding under Chapter 7 or 11.

Section 561(d) cannot be read, as the Liquidators assert, to impose a territorial limit

(which would be applicable to U.S. law-based avoidance claims) on the scope of the safe harbor.

This is made especially clear by the parenthetical that immediately follows the language quoted

above:  "such enforcement [is] not to be limited based on the presence or absence of assets of the

---

"the Shangri-La of class action litigation for lawyers representing those allegedly cheated in foreign securities
markets." *Morrison*, 561 U.S. at 270.

debtor in the United States." This language is consistent with the broader purpose of

Section 546(e), which is to ensure the finality of "securities contracts" and "minimiz[e] the

displacement caused . . . in the event of a major bankruptcy affecting those markets." *Picard v.*

*Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 416 (2d Cir.

2014). Even if one were to accept the Liquidators' contorted reading of this parenthetical as

solely limiting efforts to prevent the enforcement of securities contracts (which ignores the

clause's placement), Opp. 62-65, it would not help them. The Liquidators are trying to prevent

Defendants' enforcement of their explicit redemption rights under the Articles, which would also

obstruct the finality of redemption transactions. Section 561(d) was designed to avoid this

precise situation.

The Liquidators' reliance on *Hosking v. TPG Capital Mgmt., L.P. (In re Hellas*

*Telecomms. (Lux.) II SCA)*, 526 B.R. 499 (Bankr. S.D.N.Y. 2015), Opp. 57-58, is unavailing.

That court did not consider the types of claims and relief available to foreign representatives in

Chapter 15 proceedings, Section 561(d)'s express statutory limitations on avoidance relief, or the

significant differences between claim-creating and claim-precluding statutes. Instead, the court

merely expressed uncertainty, in *dicta*, as to how to apply Section 546(e) in a Chapter 15 case.

*Hosking*, 526 B.R. at 514.

2. <u>Comity Considerations Cannot Trump Express Statutory Mandates</u>

The Liquidators' argument that comity requires limiting Section 546(e)'s application to

domestic transfers, Opp. 64-65, is also incorrect. Express and mandatory statutory provisions—

such as Sections 561(d) and 546(e), which supersede foreign law—"impose certain requirements

and considerations that act as a brake or limitation on comity."[30]  Because the Court cannot

decline to apply Section 546(e) in this Chapter 15 case, comity considerations are irrelevant and

cannot save the Liquidators from the mandatory application of Section 546(e).[31]

Moreover, the Court would best promote comity by dismissing the Actions under Section

546(e) and allowing BVI courts to develop BVI law, if the Liquidators choose to pursue their

claims there.  The BVI has a greater interest in this dispute and in developing its own law.  *See*

*Maxwell*, 93 F.3d at 1053.  The purpose of comity is not for U.S. courts to decide novel issues of

foreign law or to create rights under U.S. law where they otherwise would be unavailable.  This

is all the more true in the Chapter 15 context, where the foreign main proceeding is in the BVI.

Thus, even if comity were relevant, it would weigh in favor of dismissal.

### 3.  <u>Section 546(e) Applies to All of the Claims</u>

The Liquidators' argument that Section 546(e) does not bar their Common Law and

Contract Claims, Opp. 70-71, is baseless.  These claims seek the restitution of money paid

pursuant to securities contracts based on purportedly inflated redemption payments made by the

Funds, and Defendants' refusal to return such monies.  *See id.* 16 ("The claims attack the

redemption payments . . . .").  That the Liquidators style the relief requested as "money

damages" is irrelevant:  their claims seek the avoidance of settlement payments, which Section

546(e) precludes.[32]

---

[30]    *Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*, 768 F.3d 239, 245 (2d Cir. 2014); *see also Maxwell Commc'n Corp. v. Societe Generale (In re Maxwell Commc'n Corp. plc)*, 93 F.3d 1036, 1047 (2d Cir. 1996) (comity "has no application where Congress has indicated otherwise").

[31]    *See Farnum Place*, 768 F.3d at 246 (rejecting comity argument where bankruptcy court was "*required* to conduct a section 363 review"); *Farnum Place, LLC v. Krys (In re Fairfield Sentry Ltd.)*, No. 16-2127-bk, 2017 WL 2258282, at *3 (2d Cir. May 22, 2017) (same).

[32]    *See, e.g.*, Consol. Br. 38 (collecting cases holding that Section 546(e) bars any claim that effectively acts as an avoidance claim); *Peterson v. Enhanced Inv. Corp. (Cayman) Ltd. (In re Lancelot Inv. Fund, L.P.)*, 467 B.R. 643 (Bankr. N.D. Ill. 2012), *aff'd sub. nom Peterson v. Somers Dublin Ltd.*, 729 F.3d 741 (7th Cir. 2013) (Section 546(e) bars recovery of excessive redemption payments even if claim is asserted under a breach of contract theory).

The Liquidators also cannot escape Section 546(e) simply because they have brought claims under foreign common law. While the cases Defendants cite applied Section 546(e) only to U.S. state law claims, Congress has the power to preclude parties from bringing claims in a U.S. court based on foreign law.[33] It has done so here: as shown above, Congress clearly intended Section 546(e) to preclude foreign law avoidance claims in Chapter 15 proceedings. *See supra* Part III.A.1-2. The safe harbor thus bars all of the Liquidators' claims.

### B.  The Common Law and Contract Claims Are Barred as a Matter of Law

#### 1.  The Liquidators Are Precluded from Raising Citco's Bad Faith

The Privy Council Decision bars the Funds' claims, and the Liquidators cannot—under U.S. or BVI law—raise Citco's alleged bad faith now to avoid that result. The Liquidators do not deny that they knew well before the commencement of the Preliminary Issues proceeding in the BVI that they could argue that the Funds' NAV certificates may have been issued in bad faith. If the Liquidators wished to preserve the argument that certificates issued in bad faith may not be binding, they could and should have done so in the Preliminary Issues proceeding. Their failure to have done so dooms their Common Law and Contract Claims.

##### i.  *Federal Law Governs the Preclusive Effect of the Privy Council Decision*

The Liquidators make no meaningful argument that they can pursue their claims in the face of federal preclusion law, if it were applied here. *See* Opp. 40 & n.51. This is fatal. While the Liquidators' claims are precluded under any potentially applicable preclusion principle, federal preclusion law applies.

As an initial matter, the Liquidators are wrong that New York choice-of-law rules determine which law governs the preclusive effect of the Privy Council Decision. Contrary to

---

[33]      *See, e.g.*, *Giannopoulos v. Iberia Lineas Aèreas de España, S.A.*, 17 F. Supp. 3d 743, 751 (N.D. Ill. 2014); *LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 237-38 (S.D.N.Y. 2007).

the Liquidators' argument, *Gaston & Snow* does not apply here, where the underlying claims are

indisputably not "based upon state law." *Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 599,

601 (2d Cir. 2001). Rather, as the Liquidators have argued from the outset of this litigation, the

Common Law Claims implicate foreign law and thus are not "State law claim[s] or State law

cause[s] of action."[34] Where, as here, there is no U.S.-state interest in claims brought in federal

court, and no federalism concerns, "there is no apparent reason to consult state law, and federal

courts routinely determine the res judicata effects of foreign judgments without any reference to

state law."[35]

Given the absence of any state law interest and the inapplicability of *Gaston & Snow*, the

only courts in the United States with any possible interest in this dispute are the federal courts.

Thus, if this Court has subject matter jurisdiction, it should apply federal choice-of-law rules.

The Liquidators do not dispute that federal courts routinely do this in federal question cases.

Opp. 38 n.47; *see also Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d

786, 795 (2d Cir. 1980); *Simmtech Co. v. Citibank, N.A.*, No. 13-CV-6768 (KBF), 2016 WL

4184296, at *8 (S.D.N.Y. Aug. 3, 2016), *appeal docketed*, No. 16-2994 (2d Cir. Aug. 29, 2016)

(applying federal choice-of-law rules even to common law claims).

Moreover, even if *Gaston & Snow* did apply in the absence of state law claims (which it

does not), under the Liquidators' own arguments it would still require the application of federal

choice-of-law rules. This is because, as the Second Circuit explained in *Gaston & Snow*, federal

law must apply when a case "implicates important federal bankruptcy policy." *In re Gaston &*

---

[34]      Foreign Representatives' Omnibus Suppl. Mem. of Law in Further Opp. To Defs.' Mots. to Remand or
Abstain at 21, No. 10-03496 (Feb. 7, 2011) (Dkt. No. 157); *see also* Opp. 70.

[35]      *In re Birting Fisheries, Inc.*, 300 B.R. 489, 502 n.13 (B.A.P. 9th Cir. 2003) (citation omitted); *see also Eli
Lilly Do Brasil, Ltda. v. Fed. Express Corp.*, No. 04 Civ. 5285, 2005 WL 2312547, at *3 (S.D.N.Y. Sept. 21, 2005)
("[T]here is simply no rationale for injecting state choice-of-law rules into what is otherwise an exclusively federal
case."), *aff'd*, 502 F.3d 78 (2d Cir. 2007).

*Snow*, 243 F.3d at 605.  Here, the Liquidators contend just that, arguing that Chapter 15 places

"'emphasis on concentrating the resolution of cases involving foreign bankruptcies in one court

system'—*i.e.*, the *federal* court system."  Opp. 24 (quoting *Firefighters' Ret. Sys. v. Citco Grp.*

*Ltd.*, 796 F.3d 520, 525-26 (5th Cir. 2015)).  More broadly, these Actions largely rest at the

intersection of federal bankruptcy, foreign, and federal securities laws (through Section 546(e)),

warranting the application of federal common law to vindicate these interests.[36]

Additionally, as the Liquidators' own expert recognizes, the BVI's general abuse of

process estoppel principle, *Henderson v. Henderson*, is considered "procedural," Moss II ¶¶ 38,

54, so this Court should determine whether its process has been abused "in accordance with its

own rules."  This further supports the application of federal choice-of-law rules (and federal

preclusion law) under *Erie*.  *See, e.g.*, *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) ("The broad

command of *Erie* was therefore identical to that of the Enabling Act:  federal courts are to apply

state substantive law and federal procedural law.").

The Liquidators do not dispute that the "majority of U.S. courts" applying federal choice-

of-law rules have held that "federal standards" determine whether and to what extent a foreign

judgment should be given preclusive effect.  *Hurst v. Socialist People's Libyan Arab Jamahiriya*,

474 F. Supp. 2d 19, 32-33 (D.D.C. 2007); *see also Simmtech*, 2016 WL 4184296, at *8.  As

described in *Alfadda v. Fenn*, 966 F. Supp. 1317 (S.D.N.Y. 1997),[37] this is the correct approach.

Neither the Full Faith and Credit Act nor broader federalism principles are relevant in the context

of foreign judgments, and thus "no rule prevents a court in the United States from giving greater

---

[36]      Moreover, unlike in *Gaston & Snow*, it is not "difficult to argue that any forum shopping occurred" here,
where it is clear that the Liquidators chose to split their identical legal theories against different Defendants between
the BVI Actions and these Actions.

[37]      The Liquidators' implication that *Alfadda* has in any way been "superseded," Opp. 38 n.47, is unfounded.
Courts around the country, including in this district, continue to rely upon *Alfadda* and its reasoning.  *See, e.g.*,
*Hurst*, 474 F. Supp. 2d at 32-33; *Simmtech*, 2016 WL 4184296, at *8.

preclusive effect to a judgment of a foreign state than would be given in the courts of that state." *Id.* (citing Restatement (Third) of Foreign Relations Law § 481, cmt. c (1987)).

In fact, as *Alfadda* makes clear, there are several policy reasons for U.S. courts to apply federal, rather than foreign, preclusion principles. Federal preclusion principles seek to avoid unnecessary relitigation and "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *see also* 18B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4473 (2d ed. 2017). In addition, applying the preclusion principles of a foreign jurisdiction, which might have other procedural mechanisms to avoid abusive litigation that U.S. courts may not be able or may be more reluctant to apply, would provide plaintiffs the opportunity to forum shop. *Alfadda*, 966 F. Supp. at 1329.

Here, the Liquidators' renewed attempt to salvage their claims before this Court by raising Citco's bad faith is a paradigmatic example of forum shopping and burdensome relitigation. The Liquidators could and should have sued all Defendants in the BVI, raised the issue of bad faith there, and accepted the Privy Council's authoritative judgment on BVI law. Instead, they chose to relitigate here and create the risk of inconsistent decisions. These tactics should not be endorsed. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329-30 (1979).

>                    *ii. BVI Law Also Precludes The Liquidators From Alleging Citco's Bad Faith*

The Liquidators are also wrong in claiming that Defendants failed to provide the Court with appropriate guidance if BVI preclusion principles apply. Opp. 40 n.50. Defendants made clear that the Liquidators would also be barred from raising their claims by the BVI doctrines of issue estoppel and *Henderson v. Henderson* abuse of process. *See* Decl. of Simon Mortimore QC, dated January 13, 2017 ("Mortimore I") ¶¶ 41-56.

a.    The Liquidators Should Have Raised Citco's Bad Faith in the BVI

While the Liquidators spend pages upon pages arguing that BVI preclusion principles apply, they include just a single page on the most relevant issue—what they knew about whether the certificates may have been issued in bad faith by September 2011, when Justice Bannister required that the Liquidators raise all legal arguments and factual issues "actually known" to them.  *See* Opp. 44-45.  If, at that time, they had reason to believe that the certificates might have been issued in bad faith and thus arguably were not binding, they were required to raise that argument then if they wished to preserve it.  Mortimore II ¶¶ 36-40.  They chose not to do so.

Tellingly, the Liquidators do not now dispute that, by 2011, they already had alleged that some of the Directors had acted in bad faith and that they were aware that Fairfield investors had sufficiently pleaded that Citco had acted in bad faith.  These undisputed facts are inconsistent with the Liquidators' assertion now that they "did not obtain access to sufficient, specific evidence to consider litigation of the Bad Faith Issues until the summer of 2014."  Opp. 44.

The Liquidators try to minimize the significance of what they knew by arguing that the allegations in *FGG* and *Anwar* raised only "red flags" showing that the defendants "knew or should have known" about Madoff's fraud, which would not have been sufficient to plead bad faith under BVI law before Justice Bannister.  *Id.* 45.  In fact, those allegations are no different from what the Liquidators seek to allege against Citco and Knowledge Defendants now.[38]

The Liquidators' argument is wholly beside the point, however, since it does not matter whether the Liquidators could have sufficiently pleaded bad faith against Citco back in 2011.  Mortimore II ¶¶ 31-40.  The Preliminary Issues proceeding was designed to address dispositive

---

[38]    *See* Moss II ¶ 104 (bad faith can be shown based on willful blindness or reckless indifference); PAC ¶ 47 (Citco acted in bad faith because it "turned a blind eye to the reality reflected in the information and instead proceed[ed] with issuing the Certificates as if there were no problem"); Fourth Am. Compl. at 28, *Sentry v. UBS AG New York*, No. 10-03780 (Bankr. S.D.N.Y. Sept. 8, 2016) (Dkt. No. 26-1) (UBS acted in bad faith because "UBS AG Knew or Should Have Known of the BLMIS Fraud").

*legal*, not factual, questions, including specifically whether the Funds had issued binding certificates. *Id.* The information the Liquidators had by 2011 put them on notice of the need to raise before Justice Bannister the legal question of whether certificates that were not "given in good faith by or on behalf of the Directors" would be binding. *Id.* ¶ 38; Sentry's Articles, Art. 11(1), (Hare Decl., Ex. F). The fact that this was an obvious issue at the time is plainly demonstrated by the PI Defendants' having themselves briefed this precise question in the same proceeding. The Liquidators made a conscious decision not to respond, thus waiving the issue, and then made an unqualified concession before the Privy Council that if the documents under consideration were certificates, then they were binding on the Funds. *Id.* ¶ 39. Thus, under the rules set by Justice Bannister, the Privy Council necessarily decided that the certificates were binding despite any allegation that they had been issued in bad faith. *Id.* ¶¶ 36, 39.

> b. <u>BVI Preclusion Principles Bar the Liquidators from Raising the Legal Significance of Citco's Bad Faith Before This Court</u>

Since the Privy Council Decision foreclosed the bad faith argument, the only remaining question is the effect that decision should have on these Actions if BVI preclusion principles apply. The Liquidators' own expert agrees that the context of the claims is critical to determining whether they are barred by BVI preclusion principles. Moss II ¶ 43. The context here confirms that the Liquidators were well aware that the Preliminary Issues proceeding was, in effect, a test case, intended to determine legal issues common to a group of similar cases, which would be taken to the highest court for a decision that would apply to defendants in all cases. Mortimore II ¶ 21-30. There was plainly no need for every defendant sued in the BVI or the United States to join in that litigation, because it was inherent in the Preliminary Issues proceeding that all redeemers would be bound by the ultimate ruling. Mortimore II ¶ 29. Indeed, the primary purpose behind Judge Lifland's stay was to await "pending developments in

connection with . . . any appeal from the judgment of the [BVI Court]."[39]  The Privy Council

also recognized that its decision would be authoritative with respect to the Common Law Claims

in the United States.[40]

Contrary to the Liquidators' position, the BVI doctrine of issue estoppel precludes them

from raising Citco's alleged bad faith because there is more than sufficient privity between

Defendants here and the defendants who litigated the Preliminary Issues before the Privy

Council.  *See* Mortimore II ¶¶ 20-36.

Moreover, it is clear that the Liquidators' course of conduct—choosing not to raise the

bad faith issue at the appropriate time in the BVI Actions in an attempt to pursue another bite at

the apple in this Court—has been abusive, vexatious, and harassing.  *Id.*  ¶¶ 37-40; Consol. Br.

46-47.  The Liquidators "knew at the time" of the initial proceeding before Justice Bannister that

the certificates might have issued in bad faith.  Consol. Br. 48-51.  They chose not to raise

that issue then, and thus are precluded from doing so now by the separate BVI *Henderson v.*

*Henderson* abuse of process doctrine, Mortimore II ¶¶ 41-49, which the Liquidators concede

does not require privity, Moss II ¶ 56.[41]

---

[39]      Am. Order Staying Redeemer Actions, Adv. Pro. No. 10-03496 (SMB) (Bankr. S.D.N.Y. Oct. 19, 2011)
(Dkt. No. 418).

[40]      Privy Council Decision ¶ 5 (Hare Decl., Ex. Q) ("[P]roceedings have been brought by the Fund in other
jurisdictions against other Members and former Members to recover redemption payments.  They include more than
300 actions in the United States . . . [which] have been stayed pending the outcome of these proceedings.").

[41]      To the extent that the Liquidators suggest that this Court should not apply any preclusion principle because
BVI courts consider *Henderson* preclusion to be procedural, that is incorrect.  If this Court were to determine that
New York choice-of-law rules apply to determine the preclusive effect of the Privy Council Decision, despite
Defendants' argument to the contrary, and that those rules point to the preclusion principles of the BVI, then it
should apply *Henderson*, regardless of the BVI courts' characterization of that principle, in order to avoid "the
dreaded renvoi."  *Kim v. Co-op. Centrale Raiffeisen-Boerenleebank B.A.*, 364 F. Supp. 2d 346, 350 n.8 (S.D.N.Y.
2005).

2.   The Liquidators' Claims Fail Under BVI Law Even if Not Precluded

Even if the Liquidators were not precluded from raising Citco's alleged bad faith (which they are), their proposed amendments are futile, as they still fail to state a claim under BVI law.

*First*, the Liquidators cannot cabin the Privy Council Decision to three short catch-phrases, Opp. 38-39, as the decision is far broader and forecloses the Liquidators' claims in their entirety.  The Privy Council unequivocally held that the "sole object" of the certification process was to "produce finality" for the Funds, their directors, and their shareholders.  Privy Council Decision ¶ 26 (Hare Decl., Ex. Q).  For this reason, the NAV certificates' binding nature was not affected by the fraud perpetrated by BLMIS, which (like Citco) was an agent for the Funds and whose bad faith was the basis for the inflated NAV.  *Id.*  Likewise, there is no basis to depart from this finality principle simply because an intermediary agent, Citco, allegedly acted in bad faith in calculating the NAV based on the prices fraudulently generated by BLMIS, which also acted as the Funds' agent.  In either case, the Liquidators' argument is that the NAV did not reflect the true value of the shares.  The Privy Council Decision leaves no doubt that this is irrelevant and that the certificates remain binding.  *See* Mortimore II ¶¶ 50-57; Consol. Br. 52.

*Second*, the Privy Council Decision also forecloses the Liquidators' attempt to imply into the Articles a term that Defendants must return purportedly inflated redemption payments.  Mortimore II ¶¶ 92-97.  This would contradict the Privy Council's express rejection of the Liquidators' attempt to require precisely such a repayment, albeit under a different theory.  Privy Council Decision ¶ 26 (Hare Decl., Ex. Q).  It thus plainly cannot be considered either "obvious" or "necessary . . . to give business efficacy to [the] Articles."  Mortimore I ¶ 89.

*Third*, the EC Court of Appeal held that the Liquidators' claims are barred for the independent reason that, even if no valid certificates had been issued, the investors gave good consideration by surrendering their shares.  EC Court of Appeal Judgment ¶ 87 (Kite Decl.,

Ex. G).  The Liquidators do not dispute that the Privy Council dismissed their appeal of this

holding.  Opp. 39.  They do not (and cannot) argue that the Privy Council granted the appeal and

affirmed on different grounds.  Yet they invite the Court to treat the Privy Council Decision as if

it had done just that, asserting that its discussion of the separately-appealed, but related, Article

11 Issue supersedes the "*ratio decidendi*" of the EC Court of Appeal on the Good Consideration

Issue.  *Id.*  That is not how *stare decisis* works in the BVI.  *See* Mortimore II ¶¶ 12-17.[42]  The

highest source of BVI law on the Good Consideration Issue remains the decision of the EC Court

of Appeal.  That decision thus bars the Liquidators' claims.  *See id.* ¶¶ 11-17; Consol. Br. 53-54.

*Fourth*, under BVI statutory law, the Liquidators "may not assert against a person dealing

with the company . . . that . . . a document issued on behalf of a company by a director, employee

or agent of the company with actual or usual authority to issue the document is not valid or not

genuine."  BVI Business Companies Act 2004 § 31; Mortimore II ¶¶ 60-63.  Rather than trying

to explain why this clear statutory language is somehow inapplicable here, the Liquidators resort

to arguing that additional implied terms should be read into the Articles that override this

statutory mandate, such that the certificates received by the redeeming Defendants could be valid

and genuine, but in some way not "conclusive."  Moss II ¶ 79.  The Liquidators offer no relevant

authority to support this proposition, and there is none.  *See* Mortimore II ¶¶ 60-63.

*Fifth*, the Liquidators agree that BVI law requires that contracts be construed so as "not to

permit one party to take advantage of his own wrong."  Opp. 46.  Accordingly, the Articles

---

[42]        Nor is that how *stare decisis* works in the United States.  *See, e.g.*, *In re Arab Bank, PLC Alien Tort Statute
Litig.*, 808 F.3d 144, 157 (2d Cir. 2015) (Second Circuit decision affirmed by Supreme Court on alternative grounds
remains binding law of the Circuit); *Broudy v. Mather*, 460 F.3d 106, 112 (D.C. Cir. 2006) (same).  The cases the
Liquidators cite are not to the contrary.  In those cases, the appellate courts "impliedly decided" that the alternative
holdings of the lower courts were foreclosed.  *See In re Coudert Bros. LLP*, 809 F.3d 94, 101 (2d Cir. 2015);
*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 671 F.3d 261, 270 (2d Cir. 2012).  Here, by contrast, the Privy
Council did not impliedly decide the Good Consideration Issue.  To the contrary, it "confirm[ed] the affirmative
answers given by the EC Court of Appeal and Bannister J" on that issue.  Mortimore II ¶ 13.  Accordingly, the EC
Court of Appeal's decision remains a binding statement of BVI law.

should not be read to allow the Funds to evade their obligations by claiming that the certificates

are not final or binding due to their own agent's bad faith, which is imputed to them and thus is

their own wrong.  *See* Mortimore II ¶¶ 64-83; Consol. Br. 52-53.

The Liquidators' only response to this argument is that "the bad faith of a dishonest agent

will not be imputed to the principal for the purpose of defeating a restitution claim against an

innocent recipient of the principal's property."  Opp. 46.  This is both unsupported and

irrelevant.  Indeed, the Liquidators' own expert concedes that "there is currently no clear

authority" for this proposition, Moss II ¶ 89, and the cases he cites confirm that it has no basis in

existing BVI law, as none holds that an agent's bad faith cannot be imputed to the principal

where, as here, the agent acted *within* the scope of its duties.  Additionally, Mr. Moss's

uncorroborated argument that "it would be extraordinarily unjust if a principal's claim for

restitution of money from someone unjustly enriched . . . were to be defeated by the agent's bad

faith or fraud," *id.* ¶ 89(c), is at odds with the Privy Council Decision, which specifically barred

the Liquidators' restitution claims despite Defendants' supposed unjust enrichment based on the

purported benefit they derived as a result of *BLMIS's* fraud on the Funds.  Privy Council

Decision ¶ 26 (Hare Decl., Ex. Q).

*Sixth*, the Liquidators' attempted reliance on formal logic, Opp. 47, contains a basic

logical fallacy.  They suggest that because the Privy Council held that a certificate issued in good

faith binds "all parties," then the "obvious corollary" is "that a bad faith certificate will not bind

any party."  *Id.* 47-48.  The Liquidators have "committed the fallacy of denying the antecedent"

and thus seek an invalid inference.[43]  While the contrapositive of the Privy Council's holding—

*i.e.*, if a certificate does not bind all parties, then it was not issued in good faith—must be true,

---

[43]    Ruggero J. Aldisert, *Logic for Lawyers:  A Guide to Clear Legal Thinking* 160 (Nat'l Inst. for Trial
Advocacy eds., 3d ed. 1997).

the Liquidators' proposed inversion—*i.e.*, if a certificate is issued in bad faith, then it will not

bind all parties—is not necessarily true.[44]  In fact, the Liquidators' construction is false, as BVI

law provides that certificates purportedly issued in compliance with the Articles (as they were

here) are conclusive.  *See* Mortimore II ¶¶ 52-57, 82-83.

 *Seventh*, the Liquidators' claims are barred by the *ex turpi causa* principle.  Mr. Moss

cites no authority to support his argument that Citco's alleged bad faith would not be imputed to

the Funds.  Indeed, the one case he does cite suggests that bad faith *must* be imputed, since the

Liquidators' claims now can only "arise" if the certificate was issued in bad faith.  *See* Moss II

¶ 93.  Thus, Citco's alleged bad faith is imputed to the Funds.  *See* Consol. Br. 54-55; Mortimore

II ¶¶ 84-87.

 The Liquidators' alternative *ex turpi causa* argument, that BVI courts would balance

various equities to determine whether to bar the instant claims, is also unavailing.  The Privy

Council has already opined directly about the "societal costs" of allowing these claims to

proceed, noting that continued litigation would unfairly subject shareholders to open-ended

liability.  Privy Council Decision ¶ 23 (Hare Decl., Ex. Q).  The Liquidators' attempt to frame

this case as a dispute between "unredeemed shareholders (represented by the Liquidators) and

redeemed shareholders who are material beneficiaries," Opp. 50, does not alter this conclusion.

This was raised before (and rejected by) the Privy Council:  the Liquidators, representing

unredeemed shareholders, cannot recover from redeemed shareholders.  Privy Council Decision

¶ 23 (Hare Decl., Ex. Q).

---

[44] *See State v. Saykao*, No. 73250-1-I, 2016 WL 3190529, at *2 n.21 (Wash. App. 2016) ("Given a proposition, 'if A then B,' only the contrapositive, 'if not B then not A,' is a valid inference.  Here the court attempts to infer the inverse, 'if not A then not B' from section 402.03—an invalid inference."); *Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690, 703 n.20 (2d Cir. 1980) ("The proposition that 'A implies B' is not the equivalent of 'non-A implies non-B,' and neither proposition follows logically from the other.").

*Finally*, though the Liquidators do not address this subject in their brief, instead leaving it to Mr. Moss, it is clear that their allegations against Citco are insufficient to plead that it acted in bad faith.  The Liquidators allege only that Citco had "a vague feeling of unease" or "untargeted or speculative suspicion."  *See* Mortimore I ¶ 116(b); Mortimore II ¶¶ 98-104.  Without sufficient allegations of bad faith, the Liquidators' proposed amendments are futile.

### 3.    The Court Should Also Dismiss the Declaratory Judgment Claims

The Court should also exercise its "unique and substantial discretion" to dismiss the Liquidators' claims for declaratory judgments.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  The Liquidators incorrectly assert that a declaratory judgment would provide the parties with "relief from uncertainty," Opp. 52, when, in fact, any declaratory judgment either would be duplicative of the Court's resolution of the Contract Claims or would otherwise present an inappropriate risk of "friction between sovereign legal systems" with respect to the BVI Insolvency Claims.  *See Crane v. Poetic Prods. Ltd.*, 351 F. App'x 516, 518 (2d Cir. 2009).  Issuing a declaratory judgment based on such uncertainty would be particularly inappropriate here, where there is a dispute under Section 249 of the BVI Insolvency Act as to whether a U.S. court can even grant the statutory relief that the Liquidators seek.  *See infra* Part III.D.6.

### 4.    The Citco Subscribers' Purported Bad Faith Is Irrelevant

The Liquidators' "revised" allegations regarding the Citco Subscribers—which were submitted through a footnote in the Opposition[45] only *after* Defendants identified multiple pleading defects in the Complaints—do not save their claims.

*First*, these "revised" allegations are not properly before the Court.  Neither this Court's Supplemental Case Management Order (the "CMO") nor any other federal rule permits the

---

[45]      *See* Opp. 52 n.65 (submitting revised proposed amended complaints as Exhibits E and F to the Declaration of David J. Molton in Further Support of Motion for Leave to Amend and in Opposition to Defendants' Motion to Dismiss, dated March 31, 2017 ("Molton II")).

unilateral submission of new proposed amendments in the middle of this briefing process.
Indeed, the Liquidators' submissions undermine the CMO's purpose, which was to provide a
clear and efficient procedure to address a novel theory about Citco's bad faith.  The Liquidators
had years to develop this theory, which they admit they learned of, at the latest, in 2014, Opp. 44
(and actually knew of by 2011, Consol. Br. 48-51).  Under the CMO, the Liquidators were
required to set forth their allegations in proposed amended complaints, to which Defendants
would then have the opportunity to respond.  The Liquidators offer no excuse for their attempt to
circumvent this procedure by belatedly making "revised" allegations *after* Defendants already
responded.  In fact, the only thing the proposed "revised" allegations demonstrate is that even the
Liquidators understand that their proposed amendments were legally deficient.  The admission of
new pleadings at this late stage would require Defendants to litigate against a moving target.
That is unfair, procedurally improper, and should be rejected by this Court.  *See, e.g.*, *Berman v.
Parco*, 986 F. Supp. 195, 217 (S.D.N.Y. 1997) (rejecting a belated attempt to amend where "the
movant knew or should have known of the facts upon which the amendment is based when the
original pleading was filed, particularly when the movant offers no excuse for the delay").

*Second*, the Liquidators' "revised" proposed amended complaints still fail to adequately
plead with particularity that the Citco Subscribers had knowledge or suspicions of the BLMIS
fraud, much less that they made any deliberate decision to avoid confirming any such knowledge
or suspicions.  *See* Mortimore II ¶¶ 98-104.  Instead, like the original allegations, these "new"
allegations improperly seek to attribute the knowledge of non-Citco Subscriber entities to the
Citco Subscribers, which is plainly impermissible under BVI law.  *See* Consol. Br. 57-58.

*Third*, even assuming *arguendo* that the Liquidators had sufficiently pleaded that the
Citco Subscribers redeemed in bad faith, they fail to show that this bad faith can be further

imputed to Defendants who used the Citco Subscribers as financial intermediaries to carry out the ministerial tasks of making redemptions and receiving redemption payments. *See id.* The Liquidators' imputation theory—that the Citco Subscribers obtained knowledge of the BLMIS fraud during the course of their relationship with these Defendants, and that such knowledge was "relevant and important" to their duties to these Defendants—is contradicted by the very documents submitted by the Liquidators. The Brokerage and Custody Agreement between the Citco Subscribers and certain Defendants confirms the ministerial nature of this agency relationship. *See* Brokerage & Custody Agreement §§ 7.1-3 (Molton II, Ex. I). This agreement expressly *disclaims* the Citco Subscribers' responsibility to monitor investments for those Defendants, who thus bore all underlying risks. *See id.* §§ 6.3, 10.1. There is simply no basis for imputing knowledge obtained by the Citco Subscribers outside this limited relationship. *See* Mortimore II ¶¶ 119-21.

*Fourth*, the Liquidators fare no better relying on Article 8 to make the erroneous argument that their claims do not actually require imputation of the Citco Subscribers' alleged bad faith to Defendants. Opp. 53. Article 8 enables the Funds to deal directly with registered owners to carry out contractual obligations, such as giving notice of shareholder meetings and making distribution payments. *See* Mortimore II ¶ 114. It does not alleviate the Liquidators' burden to plead bad faith against Defendants that ultimately received the redemption payments.[46] The absurdity of the Liquidators' theory that Citco is the real party in interest is demonstrated by their failure even to sue Citco in these Actions.[47]

---

[46]       The Liquidators' similarly cannot rely on the Subscription Agreements, *see* Opp. 53, which do not concern redemptions in any way. *See* Mortimore II ¶ 115.

[47]       Moreover, if Citco's knowledge were not imputed to the Funds because they are deemed "victims" of Citco's bad faith, Opp. 55, Defendants who invested through Citco were likewise victims. Consol. Br. 58; *see also* Mortimore II ¶ 110. The Liquidators' contention that these Defendants were not victims simply because they

*Fifth*, because the claims against these Defendants do not arise from their own

misconduct (nor is there any allegation that they even knew of Citco's bad faith), these

Defendants are as equally entitled to rely on the good consideration defense established by the

EC Court of Appeal as any other Defendant. *See* Mortimore II ¶¶ 115-21.

### C.  The Liquidators Fail to Allege Any Injury Arising from the Redemptions

The Liquidators' failure to plead injury-in-fact is also fatal to their claims. *See* Consol.

Br. 58 n.40.  The Liquidators' only counterargument is that Defendants' refusal to repay the

redemptions "subsequent to" BLMIS's collapse represents a "classic economic" injury-in-fact.

Opp. 55.  This is flawed because it applies only to the purported Contract Claims, which rest

entirely on a relatively recent recalculation of NAV and demand for repayment.[48]  However, "a

plaintiff must demonstrate standing for each claim and form of relief sought."[49]

The Common Law Claims and BVI Insolvency Claims are premised on redemptions that

occurred *before* the collapse of BLMIS.  The Liquidators do not even try to argue that the Funds

suffered economic injury when those redemptions took place.  At the time, while the BLMIS

fraud was ongoing, the Funds were readily able to obtain money for redemptions from BLMIS.

Accordingly, the Liquidators have not alleged any injury-in-fact to support any claim based on

Defendants' redemptions.

The Liquidators try to distinguish the loss causation precedents cited by Defendants by

pointing out that this is not a securities fraud case.  Opp. 56.  But the Liquidators offer no reason

why the same principles should not apply.  Their observation that there was no "public market"

---

received redemption payments in exchange for the Fairfield shares that were, in hindsight, valueless, Opp. 56,
borders on the absurd.

[48]      The demand for repayment based on a recalculated NAV was made in August 2012.

[49]      *Baur v. Veneman*, 352 F.3d 625, 641 n.15 (2d Cir. 2003); *see also Donahue v. City of Bos.*, 304 F.3d 110,
116 (1st Cir. 2002); *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001).

for the Funds to trade out of their positions, *id.*, is irrelevant. Prior to BLMIS's collapse, the Funds could trade out of their BLMIS positions with no economic loss.

The Liquidators also assert that the Funds' access to monies from BLMIS was "not symmetrical" with the Funds' obligation to make redemption payments. *Id.* This assertion is not based on any allegation in the Complaints. More importantly, the Common Law and BVI Insolvency Claims are not premised on a mismatch between redemptions made and the availability of money from BLMIS. To the contrary, the Complaints plainly allege that the Funds funded redemption payments by making withdrawals from BLMIS (or using subscriptions from investors earmarked for investment in BLMIS). PAC ¶ 37.

Finally, the Liquidators cite *Ross v. Bank of Am., N.A.*, 524 F.3d 217 (2d Cir. 2008), for the proposition that "the fact that an injury may be outweighed by other benefits . . . does not negate standing." Opp. 57. That language has no application here. Defendants are not arguing that the Funds suffered an injury that may be outweighed by other benefits. Rather, the Funds did not suffer any economic injury at all from the redemptions before the collapse of BLMIS.

### D.   The BVI Insolvency Claims Fail as a Matter of BVI Law

The Liquidators' own allegations defeat the BVI Insolvency Claims. *First*, the Funds were solvent when they redeemed Defendants' shares, which is fatal to these claims. *Second*, the Section 246 undervalue claims fail because the Liquidators cannot show that the transactions were undervalue without resorting to impermissible hindsight. *Third*, the Section 245 preference claims cannot be maintained because Defendants were members—and not creditors—incapable of receiving preferences. *Fourth*, the Liquidators' allegations establish that the redemptions at issue were ordinary course, good faith transactions made to benefit the Funds, precluding these claims. *Finally*, only BVI courts have the power to grant relief under Section 249.

1.   The Liquidators Cannot Use Hindsight to Show the Funds Were Insolvent

The Liquidators' allegations establish that, at all relevant times, the Funds were solvent under the BVI's cash flow test.[50]  Their only argument in response is that hindsight can be used to determine the Funds' solvency.  That argument is baseless.

*First*, the Liquidators ask the Court to disregard the fact that the BVI Insolvency Act was drafted so as to exclude hindsight from the inquiry.  Unlike the English Act on which it was modeled, which permits both a cash flow and a balance sheet test for insolvency, the BVI Act is drafted more narrowly and permits only a cash flow test.  Mortimore I ¶ 189.[51]  Significantly, while the balance sheet test takes into account contingent and prospective liabilities, the cash flow test is limited to asking whether the company was unable to pay its debts as they came due—an inquiry in which hindsight plays no part.  Mortimore II ¶¶ 160-68.[52]

*Second*, the Liquidators ask the Court to ignore the difference between the cash flow and balance sheet tests, falsely claiming that case law supports injecting hindsight into the cash flow test, as might be done in the balance sheet test.  But the Liquidators' cases confirm that hindsight has no part in the cash flow test.  *Id.*[53]  The Liquidators also misstate U.S. law on this point.[54]

---

[50]    The Liquidators make much of the fact that insolvency is presumed for members, but the Complaints' allegations rebut that presumption and show that the Funds were solvent when the redemptions were made.  Moreover, in certain Actions, the Liquidators now claim that the Citco Subscribers (rather than any Defendants) were members.  *See infra* Part III.D.5.  Accordingly, in those Actions, there are no presumptions favoring the Liquidators' position.  Mortimore II ¶ 205 n.189.

[51]    Mr. Moss concedes that the language of the BVI Act differs from the English Act, but dismisses the differences as "essentially cosmetic" changes of "style rather than substance," asking the Court to deprive them of meaning and effect based entirely on his say-so.  Moss II ¶¶ 127, 188.

[52]    *See also Re Casa Estates (UK) Ltd.* [2014] 2 BCLC 49 at ¶¶ 29-30 (cash flow test looks to "future and contingent debts falling due in the reasonably near future," but "beyond the reasonably near future, any attempt to apply the cash flow test becomes speculative" and the balance sheet test is appropriate).

[53]    *See also Phillips v. Brewin Dolphin Bell Lawrie Ltd.* [2001] 1 WLR 143 at ¶ 30 (the value of an asset is not less than "the amount that a reasonably well informed purchaser is prepared, in arms' length negotiations, to pay for it" at the time); *Countrywide Banking Corp. Ltd. v. Dean* [1998] AC 338 at ¶ 34 (the transaction "must be examined in the actual setting in which it took place").

[54]    Opp. 27 (citing *Adelphia Recovery Tr. v. FPL Grp. Inc. (In re Adelphia Commc'ns Corp.)*, 512 B.R. 447, 495 (Bankr. S.D.N.Y. 2014)).  In fact, in the very sentence partially quoted by the Liquidators, Judge Gerber stated

38

The Liquidators wrongly cite *Stanley*, *Brewin Dolphin*, and other cases that discuss a narrow exception permitting hindsight as if they stand for the proposition that hindsight is routinely allowed.  *See* Opp. 29.  *Stanley* shows that hindsight is permissible only when valuing "a covenant which was, on the facts *known at the date of the transaction*, precarious" and where there are subsequent events related to that "existing quality or defect in the asset."[55]  *Brewin Dolphin* confirms that this exception is limited to valuing assets whose defects were known to all parties at the time.[56]  However, this exception cannot apply here, as the Liquidators do not plead that, at the time the Funds engaged in each redemption transaction, they had reason to believe that BLMIS was a Ponzi scheme.  Mortimore II ¶¶ 167-68.[57]

*Third*, the Liquidators argue that the Court should presume that the Funds were insolvent because they were invested in a Ponzi scheme, but support their argument with rulings that only presumed that *Ponzi schemes themselves* were insolvent.[58]  That presumption does not stretch to investors in a Ponzi scheme, and for good reason.  A Ponzi scheme operator has full knowledge that its liabilities exceed its true assets.  By contrast, investors in a Ponzi scheme that has not yet been unmasked not only lack such knowledge, but face only a possibility, rather than a certainty,

---

that "[c]ourts must determine solvency free of impermissible hindsight."  *In re Adelphia Commc'ns Corp.*, 512 B.R. at 495 (refusing to find that Adelphia was insolvent at the time of the challenged transfer); *see also In re Edgewater Med. Ctr.*, 373 B.R. 845, 854-55 (Bankr. N.D. Ill. 2007) (courts "should refrain from using impermissible hindsight" when valuing assets and refusing to "engage in that type of speculation" in analyzing insolvency); *Paloian v. LaSalle Bank, N.A.*, 619 F.3d 688, 693 (7th Cir. 2010) ("Hindsight is wonderfully clear but . . . [h]indsight bias is to be fought rather than embraced" in analyzing insolvency).

[55]    *Stanley v. TMK Finance Ltd.* [2010] EWHC 3349 at ¶¶ 14-15 (emphasis added) (distinguishing narrow exception from a more general embrace of hindsight that would "tak[e] account of later events to value a contingency at an earlier date").

[56]    *Phillips v Brewin Dolphin Bell Lawrie Ltd*, [2001] 1 WLR 143 at ¶¶ 22-25.  The Liquidators do not cite any case in which the subsequent materialization of a problem that was *not* known at the time can be considered.

[57]    The Liquidators' argument that the Court should use hindsight to consider potential future liability that they suggest the Funds incurred at each redemption also fails, as they do not plead that the Funds had any knowledge of such claims being possible at the time that the redemptions were made.  *See* Mortimore II ¶ 201.

[58]    Notably, the Liquidators do not plead that the Funds knowingly participated in the BLMIS Ponzi scheme, which would be fatal to their Common Law and Contract Claims.  Consol. Br. 66; PAC ¶ 40 (BLMIS's fraud was "unknown to the Funds")..

of insolvency, including because they have the potential to exit from the scheme.[59]  Because

whatever claims may have theoretically existed before the Ponzi scheme was uncovered were

also unknown at that time, they would also be irrelevant under the BVI insolvency regime, which

precludes the use of hindsight.  Mortimore II ¶¶ 178-79.  Therefore, to the extent that there is an

exception that would allow the use of hindsight to find insolvency if there were a Ponzi scheme,

it does not apply here.

2.  <u>The Liquidators Cannot Rely on Hindsight to Show Insufficient
Consideration</u>

The Liquidators' argument, Opp. 27-28, that insufficient consideration was given when

the Funds redeemed Defendants' shares (a required element under Section 246) also fails, as it

too rests exclusively on impermissible hindsight.  Mortimore II ¶ 167.  Moreover, there was a

moment where, prior to the discovery of Madoff's fraud, the shares could be traded at or near

that redemption value.  As the Liquidators acknowledge, Opp. 67, n.87, "Sentry's shares were

listed on the Irish Stock Exchange" and could be bought and sold over-the-counter.

3.  <u>The Unfair Preference Claims Fail Because Defendants Were Not Creditors</u>

The Section 245 claims fail for the independent reason that only creditors can be

preferred within the meaning of Section 245, but Defendants were members, not creditors, at the

time they entered into each redemption transaction.[60]  Relying on increasingly tortured

deconstructions of each such transaction, the Liquidators argue, based on their expert-advocate's

say-so (which, in the absence of supporting precedent, resorts to Middle English, Old French,

---

[59]    *In re Lancelot* is not to the contrary, since it concerned funds that first invested in a Ponzi scheme, then
later themselves became a Ponzi scheme.  *Peterson v. Ritchie Capital Mgmt., LLC (In re Lancelot Inv'rs Fund,
L.P.)*, No. 08 B 28225, 2012 WL 718631 (Bankr. N.D. Ill. Mar. 2, 2012).  Also, this U.S. case does not address how
insolvency is determined under BVI law, and does not analyze the difference between the Ponzi schemes presumed
insolvent in the cases on which it relies, and the funds invested in a Ponzi scheme that were at issue.

[60]    This argument is unaffected by the Liquidators' new claim that, in many cases, the Citco Subscribers were
the members because the transfers, in those instances, went to them first.

40

and Latin), that the payments made in exchange for shares constitute separate transactions.  *See*

Moss II ¶ 154.  In fact, each redemption payment merely completed a transaction that had been

"entered into" when the Funds received a redemption request.  *See* Mortimore I ¶¶ 167-70.

Thus, Defendants were members when they requested redemption of their shares, and Section

245 cannot apply.  *Accord Loginovskaya v. Batrachenko*, 764 F.3d 266, 275 (2d Cir. 2014)

(contractual payments were "actions needed to carry out the transactions, and not the transactions

themselves—which were previously entered into when the contracts were executed").[61]

The Liquidators' alternative argument, that Defendants were contingent creditors when

"the redemption was requested," Opp. 26-27, is baseless, as Defendants were members at that

time.  *See* Mortimore II ¶ 146.  The Liquidators' argument that Defendants "would become

creditors" once the redemption was requested, Opp. 27, concedes as much, since any supposed

creditor status could only arise *after* the redemption transaction was entered.  *See* Mortimore II

¶¶ 145-53.  There is also no basis to conclude that each Defendant was simultaneously *both* a

member and a creditor when its redemptions were requested—any theoretical contingency could

arise, if at all, only *after* the transaction was entered into, and in fact Defendants could not

become creditors until *after* the Dealing Day, *i.e.*, when the Funds redeemed the shares from

Defendants who then were no longer registered members as provided by the Articles.  *Id.*

Defendants were thus members, not creditors, at the relevant time.

---

[61]     *Somers Dublin Ltd A/C KBCS v. Monarch Pointe*, HCVAP 2011/04 (Mar. 11, 2013), is not to the contrary and does not help the Liquidators show that Defendants were not members at the time the Funds redeemed their shares.  *Monarch Pointe* merely stands for the proposition that an unpaid redeeming member is entitled to participate in any surplus in a liquidation proceeding as a "creditor" before other members.  *See* Mortimore II ¶ 153. It does not, however, hold that such a member automatically loses its status as a member for all purposes or within the meaning of the Articles.  Article 11(4) makes plain that, until the Fund redeems the shares, redeeming members remain "registered members" and are entitled to all membership rights.  *See id.* ¶¶ 184-85.  Moreover, there is no doubt that Defendants here were all fully paid redeemed members, rendering the applicability of *Monarch Pointe* controversial at best.

4.    The Section 245 and 246 Defenses Bar the BVI Insolvency Claims

Even if the Liquidators had adequately pleaded the BVI Insolvency Claims, the

Complaints' allegations establish that these claims are barred by statute.  *See Jones v. Bock*, 549

U.S. 199, 215 (2007) ("A complaint is subject to dismissal for failure to state a claim if the

allegations, taken as true, show the plaintiff is not entitled to relief.").  The Complaints'

allegations demonstrate that the redemptions (and/or redemption payments) were ordinary course

transactions of the Funds, and therefore cannot be unfair preferences under Section 245.

Mortimore II ¶¶ 173-81.  They likewise establish that the Funds entered into the redemptions

(and/or redemption payments) (a) in good faith, (b) for the purpose of their business, and (c) with

a reasonable basis to believe that the transactions would benefit them.  This shows that these

transactions were not undervalue.  Mortimore II ¶¶ 182-204.

The Liquidators again resort to impermissible hindsight to argue that the ordinary course

and good faith defenses are inapplicable.  Opp. 31-33.  In arguing that the redemptions were not

made in the ordinary course of business, the Liquidators invite the Court to use its present

knowledge of the BLMIS Ponzi scheme to reject the otherwise obvious conclusion that the

Funds—which existed solely to sell and redeem shares—were doing nothing outside the ordinary

course when engaging in those functions.[62]  The Liquidators never allege (and in fact deny) that

the Funds were fraudulent or a Ponzi scheme, so to say that they never engaged in any ordinary

course conduct is untenable.  Similarly, the Liquidators argue that the redemptions could not

possibly have been made in good faith because of the Ponzi scheme (while denying that the

---

[62]      In arguing that the ordinary course defense does not apply, the Liquidators also mischaracterize
Defendants' prior argument about Citco's purported bad faith.  Opp. 32.  Defendants previously noted that the
Liquidators cannot both argue that the Funds acted in good faith and at the same time rely on the bad faith of their
purported agent, Citco, as the basis for claims against Defendants. Consol. Br. 54-55.  Regardless, that Citco acted
in bad faith is not adequately pleaded, and Defendants have not argued that the Funds did not act in good faith.

Funds had any knowledge of its existence).  As shown above, the cases they rely on do not permit the use of hindsight in making the relevant determinations under BVI law.[63]

As to their claim that the redemptions were not undertaken with a good faith belief that they would benefit the Funds, the Liquidators propose that the redemptions were "intended to be neutral in effect," relying entirely on their expert advocate (who provides no authority for that theory beyond his *ipse dixit*).  Moss II ¶¶ 269-71.  In addition to being entirely unsupported, this argument is nonsensical because it asks the Court to conclude that the Funds' transactions with their members—transactions that were the Funds' entire purpose for existing (and for which they received fees)—were *not* intended to benefit the Funds.

### 5.    The Citco Subscriber Allegations Also Defeat the BVI Insolvency Claims

Even if the Liquidators' belated Citco Subscriber allegations could be considered (which they cannot), those allegations would themselves bar the BVI Insolvency Claims.  The BVI Insolvency Act expressly prohibits the Liquidators from obtaining relief against "any person who received a benefit from the transaction in good faith and for value."  *See* Mortimore II ¶¶ 204-07.  This limitation plainly applies here.  *First*, under BVI statutory law, any person who receives a "benefit" from a transaction, but is not a party to it, is presumed to have acted in good faith.  *Id.* ¶ 208.  The new Citco Subscriber allegations make clear that only the Funds and the Citco Subscribers were parties to the redemption transactions.  *Id.* ¶ 209.  Defendants who invested through the Citco Subscribers are thus entitled to the good faith presumption, which the Liquidators cannot overcome.  *Id.* ¶ 210; *see also supra* Part III.B.4.  *Second*, the Defendants gave "value" in exchange for the benefits they received when they surrendered their interests in

---

[63]    The Liquidators again mischaracterize analogous principles of U.S. law, citing cases that do not support the use of hindsight in the circumstances here. *See, e.g.*, *Orr v. Kinderhill Corp.*, 991 F.2d 31 (2d Cir. 1993) (permitting a limited use of hindsight where the defendant knew, at the time of the transaction, that the transaction was not supported by fair consideration).

the redeemed shares.  Mortimore II ¶ 212.  Therefore, the Liquidators' allegations (even if

credited) would defeat the BVI Insolvency Claims against these Defendants.

### 6.    This Court Cannot Grant Relief on the BVI Insolvency Claims

In the Section 273 proceedings in the BVI (where the Liquidators chose not to assert the

BVI Insolvency Claims), Justice Leon found it "difficult to see" how this Court could "grant the

statutory relief under Section 249."  Section 273 Judgment ¶ 119 (Hare Decl., Ex. S).  He noted

that, at best, perhaps it "could make declaratory determinations," upon which "the Liquidators[]

would need to apply to [the BVI court] under Section 249" for discretionary relief, at which

point a BVI court would need to conduct a *de novo* review to independently satisfy itself that

relief could be granted at all.  *Id.* ¶¶ 121-22.  Justice Leon questioned whether proceeding in this

way would be "logical, practical, efficient, or appropriate. "  *Id.* ¶ 123.  It would not.

The BVI legislature has deliberately reserved to BVI courts the discretion to grant relief

under Section 249.  *See* Mortimore II ¶ 213-37.  As the Liquidators' expert concedes, it is "true

in an arid, technical sense"—in other words, true—that the Liquidators' *only* remedy is to apply

to the BVI court for an order under Section 249.  Moss II ¶ 128.  But Mr. Moss asks this Court to

adopt what he considers to be a "pragmatic" approach and ignore the language of the Act,

relying solely on his unsupported claim that English courts "usually" overturn "dogmatic"

concepts" that prove "impractical."  *Id.* ¶ 134.[64]  This is difficult to reconcile with traditional

principles of comity, and neither the Liquidators nor their expert explains on what basis (beyond

their own preference) this Court can pick and choose what applicable foreign law to respect.[65]

---

[64]    His example of this purported practice of the English courts consists of *dicta* from a dissent.  Moss II
¶¶ 143-44.  Whether that *dicta* in fact disapproves of a "dogmatic" approach or not, it certainly has no legal force,
and it does not speak to any of the issues being litigated here.

[65]    *See Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 491 (S.D.N.Y. 2006) (federal courts "should be more
hesitant [in applying foreign law] when doing so would necessarily involve expanding, extending, or departing from
well-settled and long established principles of foreign law"), *aff'd*, 233 F. App'x 83 (2d Cir. 2007); *In re Nortel*

The Liquidators further argue that this Court should ignore Section 249 on the incorrect premise that it is merely a procedural venue provision. Opp. 33-34. While the Liquidators rely on *In re Hellas Telecomms. (Lux.) II SCA*, 526 B.R. 499 (Bankr. S.D.N.Y. 2015), these Actions are more analogous to *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330 (9th Cir. 2015). *See* Mortimore II ¶¶ 228-31 (explaining that the statute at issue in *Hellas* is not analogous to the BVI statute at issue here). In *Seismic Reservoir*, the Ninth Circuit explained, with respect to a more analogous exclusive jurisdiction provision in a foreign statute, that "when [foreign law] creates a right, that foreign law can determine the remedy." 785 F.3d at 335. Just as the foreign statute in *Seismic Reservoir* defined "court" as the foreign court, and reserved to that court broad equitable powers to grant relief, the BVI Insolvency Act defines "court" as the BVI High Court, to which it reserves the power to grant relief. *See* Mortimore I ¶ 260. Consequently, the claims here are "one[s] upon which no relief could be granted by the [U.S.] court" and should be dismissed. *Seismic Reservoir*, 785 F.3d at 332-34.

Finally, the Liquidators' argument that Chapter 15 allows this Court to bypass the exclusive jurisdiction provision in the BVI Insolvency Act stretches Chapter 15 beyond its limits.[66] Regardless, no cognizable interest would be served by this Court taking up the BVI Insolvency Claims. The practical effect of a U.S. court order with respect to these claims would merely be *de novo* review of the same claims in the BVI, a plain disservice to the interest of judicial economy. The Liquidators' strategic decision not to bring the BVI Insolvency Claims—

---

*Networks, Inc.*, 469 B.R. 478, 499 (Bankr. D. Del. 2012) ("This Court's role under Rule 44.1 is to determine foreign law *as currently applied* by English, Irish, and French courts.") (emphasis added); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), Adv. Pro. No. 11-02732 (SMB), 2016 WL 6900689, at *11 (S.D.N.Y. Nov. 21, 2016) ("International comity is especially important in the context of the Bankruptcy Code.") (quoting *In re Maxwell Commc'n Corp. plc*, 93 F.3d 1036, 1048 (2d Cir.1996)).

[66]    PAC ¶¶ 64-65; *see also Fogerty v. Petroquest Res., Inc. (In re Condor Ins. Ltd.)*, 601 F.3d 319, 322, 327-29 (5th Cir. 2010) ("Access to foreign law offers no opportunity to gain the powers of avoidance . . . when there is no such power offered by the foreign state . . . and deference to comity does not invite forum shopping.").

which raise complex questions of BVI law that have not been addressed by BVI courts—in the

BVI constitutes blatant forum shopping that should not be rewarded.

## IV.     Foreign Defendants Were Not Properly Served

The Liquidators do not dispute that the only method of service attempted on most Foreign

Defendants was privately-dispatched postal service, a method not expressly authorized by

Federal Rule of Civil Procedure 4 or any New York analogue.  Nor do the Liquidators contest

that it is their burden to prove the adequacy of service.  *See, e.g.*, *Burda Media, Inc. v. Viertel*,

417 F.3d 292, 298 (2d Cir. 2005).  Instead, the Liquidators argue only that (i) some Defendants

purportedly consented to privately-dispatched mail service by entering into Subscription

Agreements, and (ii) privately-dispatched mail service is authorized by Article 10(a) of the

Hague Convention irrespective of Rule 4's requirements.  Neither argument has merit.

### A.  Foreign Defendants Did Not Consent to Privately-Dispatched Mail Service

Defendants did not consent to service by privately-dispatched mail.  The Liquidators

concede that they can rely on the Forum Selection Clause *only if* it applies.  Because it does not

apply, *see supra* Part II.A., it does not render mail service proper.  In any event, the Subscription

Agreements cannot bind Defendants that were not party to them.  *See supra* Part II.A.2.[67]

Further, even assuming *arguendo* that the Forum Selection Clause applied, that clause

does not on its face authorize privately-dispatched mail service.  Rather, it permits service only

"as provided by New York law" or "out of any New York court . . . by mailing copies thereof, by

certified or registered mail, return receipt requested . . . ."  Sentry Subscription Agreement ¶ 19

---

[67]        Even if the Forum Selection Clause somehow applied to Defendants who did not sign a Subscription
Agreement, nothing in the Forum Selection Clause authorizes mail service to the address of such a Defendant, as
opposed to "the address of Subscriber" (or indeed, requires that such a Defendant's address be provided to the
Funds).  Likewise, the Liquidators have not alleged that these Defendants authorized Subscribers to accept service
on their behalf, and therefore cannot demonstrate that mail delivery to a Subscriber's address could somehow
constitute effective service as to these Defendants.  *See* Opp. Appendix B-1.

(Moloney Decl., Ex. A) (the "Mail Clause").  The Liquidators do not argue that New York law

permits privately-dispatched mail service, only that New York recognizes the methods of service

permitted under the Hague Convention, which does not include privately-dispatched mail

service.  Nothing in the Mail Clause suggests that it permits any form of service other than what

is expressly authorized under Rule 4(f)(2)(C)(ii) for service dispatched by the Clerk of the Court.

### B. The Subscription Agreement Does Not Permit Service by Illegal Means

Even if service by privately-dispatched mail were contractually permitted, such service

would still be ineffective to the extent it would be illegal.  For example, the Liquidators do not

dispute that service by a private party in Switzerland is a criminal illegal act.  *See* Jeandin Decl.

¶¶ 9, 11, 17, 20(b).  Thus, any purported service in Switzerland is ineffective.

The Liquidators do not (and cannot) cite any authority that would sanction such illegal

acts.[68]  The Liquidators cannot ask this Court to enforce a contract in a manner that will result in

an unlawful act,[69] and, therefore, the Subscription Agreement should be read to permit only

service by lawful means.  The Liquidators' assertion that Swiss law has no application here

because the Subscription Agreement is governed by New York law, Opp. 75, misses the point.

The Liquidators' only other argument, that Swiss law is irrelevant because Swiss Moving

Defendants consented to service by mail and such service is not prohibited by U.S. law, Opp. 74,

likewise fails.  It ignores that the United States and Switzerland have entered into treaties

---

[68]     *See Stone v. Freeman*, 298 N.Y. 268, 271 (1948) ("It is the settled law of this State . . . that a party to an
illegal contract cannot ask a court of law to help him carry out his illegal object, nor can such a person plead or
prove in any court a case in which he, as a basis for his claim, must show forth his illegal purpose.").

[69]     *See Artache v. Goldin*, 133 A.D.2d 596, 599 (2d Dep't 1987) ("[W]here an agreement consists in part of an
unlawful objective and in part of lawful objectives, the court may sever the illegal aspects and enforce the legal
ones . . . .").

governing the performance of the judicial act of service within their respective territories, under

which Switzerland has prohibited service by mail pursuant to Article 10(a).[70]

Thus, there is no dispute that the manner in which service was purportedly effected in this

case was illegal to the extent it was effected in Switzerland in a manner prohibited by Swiss law.

And where, as here, a contract could be interpreted to allow service that would be illegal where

accomplished, that contract should not be enforced to sanction an unlawful act.[71]

### C.  The Liquidators' Method of Service Was Not Independently Valid

Apparently recognizing that their position on the Subscription Agreement is flawed, the

Liquidators also argue that service was independently valid with respect to jurisdictions other

than Switzerland[72] under Rule 4 and the Hague Convention.  Opp. 73.  They are mistaken.

There are only two potentially-relevant provisions of Rule 4.  The first is

Rule 4(f)(2)(C)(ii), which permits service by mail, but *only* when dispatched by the Clerk of the

Court.  As the Liquidators concede, no such service was effected here.[73]

The second provision is Rule 4(f)(1), which permits service "by any internationally-

agreed means."  The Liquidators are wrong in arguing that this provision applies because service

"*is* authorized by Article 10(a) of the Hague Service Convention."  Opp. 73.  Unlike other

---

[70]     *See, e.g.*, *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988) ("[C]ompliance with the [Hague] Convention is mandatory in all cases to which it applies.").  Indeed, by virtue of the Supremacy Clause, the Hague Convention *is* U.S. law, and accordingly governs the methods of service permitted from U.S. courts.  *Id.*; *see Eastern Edye v. Robertson (Head Money Cases)*, 112 U.S. 580, 599 (1884) ("[W]hen [treaty] rights are of a nature to be enforced in a court of justice, that court resorts to the treaty for a rule of decision for the case before it as it would to a statute.").

[71]     The Liquidators' invitation to Swiss Moving Defendants to waive service now, Opp. 75, is disingenuous, as there is no requirement that Swiss Moving Defendants do so.  *See In re Bernard L. Madoff Inv. Sec. LLC*, 418 B.R. 75, 84 (Bankr. S.D.N.Y. 2009).  Nor have Swiss Moving Defendants waived service through the Forum Selection Clause, as that argument elides the critical distinction between waiving service and consenting to service by specified means.

[72]     Although not explicit in this regard, the Liquidators do not dispute that the Hague Convention expressly does not permit postal service into jurisdictions that have objected thereto, such as Switzerland.

[73]     *See* Opp. 73 n.101; *see also* 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1134 (4th ed. 2017); *Ansell Healthcare, Inc. v. Maersk Line*, 545 F. Supp. 2d 339, 342 (S.D.N.Y. 2008).

48

provisions of the Hague Convention,[74] "Article 10(a) does not itself affirmatively *authorize*

international mail service." *Brockmeyer v. May*, 383 F.3d 798, 803 (9th Cir. 2004) (emphasis

added).[75]  It provides that, unless a country has expressly prohibited such service (*e.g.*, as

Switzerland has), service by mail is permitted so long as such service would otherwise be proper.

     Were there any question on the point, the Supreme Court confirmed earlier this week that

mail service is available under the Hague Convention *only* when permitted by the issuing

forum's law.  *See Water Splash, Inc. v. Menon*, No. 16-254, 2017 WL 2216933, at *8 (U.S. May

22, 2017).[76]  In holding that Article 10(a) "encompasses" mail service, the Supreme Court

explained that "this does not mean that the Convention affirmatively *authorizes* service by mail."

*Id.* (emphasis in original).  Rather, "in cases governed by the Hague Service Convention, service

by mail is permissible if two conditions are met:  first, the receiving state has not objected to

service by mail; and second, service by mail is authorized under otherwise-applicable law."  *Id.*

(citing *Brockmeyer*, 383 F.3d at 803-04).  Here, the "otherwise-applicable law" is Rule 4.

Because "[e]xplicit, affirmative authorization for service by international mail is found only in

Rule 4(f)(2)(C)(ii)," that Rule defines the scope of international mail service in these Actions.

The Liquidators plainly did not comply with that Rule, because it requires mailing by the Clerk

---

[74]    *See, e.g.*, Hague Convention Articles 5, 6 (authorizing service through Central Authority).  While service through a Central Authority is available under Rule 4(f)(1) as an "internationally agreed means of service," mail service is not affirmatively authorized by the Convention, and thus is available only under Rule 4(f)(2)(C)(ii).  *See Brockmeyer v. May*, 383 F.3d 798, 804 (9th Cir. 2004).

[75]    The Ninth Circuit's *Brockmeyer* analysis has been widely adopted.  *See, e.g., LT Game Int'l Ltd. v. DEQ Sys. Corp.*, No. CIV. 2:13-4593 WJM, 2013 WL 5536195, at *1 (D.N.J. Oct. 7, 2013); *Julien v. Williams*, No. 8:10-CV-2358-T-24, 2010 WL 5174535, at *2 (M.D. Fla. Dec. 15, 2010); *Ballard v. Tyco Int'l, Ltd.*, No. CIV. 04-CV-1336-PB, 2005 WL 1863492, at *4 (D.N.H. Aug. 4, 2005).

[76]    In this regard, *Water Splash* merely confirmed existing law.  The only contrary case cited by the Liquidators, *Papir v. Wurms*, No. 02 CIV. 3273 (RCC), 2005 WL 372061, at *1 (S.D.N.Y. Feb. 15, 2005), is foreclosed by *Water Splash*, and in any event has been characterized as a "step backwards" with a "peculiar holding" that "has not been followed by any district court."  *See* Permanent Bureau of the Hague Convention, *Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters* at 90 (2016).

of the Court, and thus the Liquidators have not made valid service on Foreign Defendants.

*Brockmeyer*, 383 F.3d at 804.

### D.  The Liquidators Should Not Be Allowed Another Attempt at Service

In this case, the Liquidators have been on notice that their means of service is invalid for

more than six years.  In that time, they have made no effort to cure their defective service,

notwithstanding every opportunity to do so.  A "plaintiff does not have unlimited time in which

to serve" a foreign defendant.  *Yellowave Corp. v. Mana*, No. 00 CIV. 2267 SAS, 2000 WL

1508249, at *2 (S.D.N.Y. Oct. 11, 2000).  Insofar as the Liquidators have proceeded without

trying to cure defective service, they have knowingly and with full notice elected to permit these

proceedings to rise or fall on whether this Court agrees with their interpretation of the

Subscription Agreements and applicable law.  Leave to re-serve so many years after these cases

began would be manifestly unjust in these circumstances; the Liquidators should be required to

live with the consequences of their elections.  *See, e.g.*, *In re Bozel S.A.*, 549 B.R. 446, 450

(Bankr. S.D.N.Y. 2016) (finding a two-year delay unreasonable).[77]

### CONCLUSION

For the reasons set forth above, this Court should deny the Liquidators' Motion for Leave

to Amend and dismiss the Complaints with prejudice.

---

[77]       The Stay Order relied upon by the Liquidators, Opp. 75 n.103, did not preclude "effecting or completing service in any Redeemer Actions already on file or in newly filed Redeemer Actions."  Am. Order Staying Redeemer Actions ¶ 4 (Oct. 19, 2011) (Dkt. No. 418).  Nor are the Liquidators' service failures excused by their improper attempts at service by mail, regardless of whether any defendant had "actual notice" of the proceedings. *See Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985) (rejecting plaintiff's argument that "dismissal was inappropriate since it reasonably believed that it had served [a foreign defendant's] American agent"); *Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 373 (2d Cir. 1978) ("[A]ctual notice of the lawsuit is not sufficient to bar a motion to dismiss under Rule 12(b)(2).").

Dated:  New York, New York
       May 26, 2017

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON
LLP


By:   */s/ Thomas J. Moloney*
     Thomas J. Moloney

One Liberty Plaza
New York, New York  10006
T: 212-225-2000
F: 212-225-3999
(tmoloney@cgsh.com)

# Appendix A

## Applicable Adversary Proceedings

| Adv. Pro. No. | Case Name |
|---|---|
| 10-03496 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Theodoor GGC Amsterdam, et al.* |
| 10-03502 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. RBC Dominion Securities Sub A/C, et al.* |
| 10-03503 | *Fairfield Sigma Ltd. (In Liquidation), et al. v. Tercas-Cassa di Risparmio della Provincia di Teramo S.P.A.* |
| 10-03504 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS ABN AMRO Global Custody, et al.* |
| 10-03505 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Privee Edmond De Rothschild (Europe), et al.* |
| 10-03507 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Meritz Fire & Marine Insurance Company Ltd., et al.* |
| 10-03508 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Schroder & Co. (Asia) Ltd., et al.* |
| 10-03508 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Schroder & Co. (Asia) Ltd., et al.* |
| 10-03509 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Santander (Suisse) S.A., et al.* |
| 10-03510 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Hapoalim (Suisse) Ltd., et al.* |
| 10-03512 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS Mizrahi Tefahot Bank Ltd., et al.* |
| 10-03513 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Syz & Co. S.A., et al.* |
| 10-03514 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Piguet & Cie S.A., et al.* |
| 10-03515 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Bilbao Vizcaya Argentaria S.A., et al.* |
| 10-03516 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., et al.* |
| 10-03519 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Neue Bank AG, et al.* |
| 10-03521 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Lombardy Properties Limited, et al.* |
| 10-03525 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fund Nominees Limited, et al.* |
| 10-03540 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Vontobel Asset Management, et al.* |
| 10-03595 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. SG Private Banking (Suisse) SA, et al.* |
| 10-03615 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank of America National Trust and Savings Association, et al.* |
| 10-03616 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque de Luxembourg, et al.* |
| 10-03618 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/BBVA Miami, et al.* |
| 10-03619 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Institutional Trust Services (Asia) Limited, et al.* |
| 10-03620 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse International, et al.* |
| 10-03621 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS Oddo & Cie, et al.* |
| 10-03622 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Citibank NA London, et al.* |
| 10-03623 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. AXA Isle of Man A/C L&C, et al.* |
| 10-03624 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Caceis Bank Luxembourg, et al.* |
| 10-03625 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. EFG Bank, et al.* |
| 10-03628 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Robinson & Co., et al.* |
| 10-03629 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/HSBC Private Banking Nom, et al.* |
| 10-03630 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Securities Services (Luxembourg) SA, et al.* |

| Adv. Pro. No. | Case Name |
|---|---|
| 10-03631 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Private Bank (Guernsey) Ltd., et al.* |
| 10-03632 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/Andbanc Andorra, et al.* |
| 10-03633 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Private Bank (Suisse) SA, et al.* |
| 10-03634 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Zurich Capital Markets Company, et al.* |
| 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* |
| 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* |
| 10-03640 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Citibank (Switzerland) AG, et al.* |
| 10-03744 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank Trust Company America, et al.* |
| 10-03745 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank (Suisse) SA Geneve, et al.* |
| 10-03746 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank (Cayman), et al.* |
| 10-03747 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank AG Singapore, et al.* |
| 10-03750 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Blubank Ltd., et al.* |
| 10-03752 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Brown Brothers Harriman & Co., et al.* |
| 10-03753 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Dresdner Bank LateinAmerika AG, et al.* |
| 10-03754 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. CDC IXIS, et al.* |
| 10-03755 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Itau Europa Luxembourg SA, et al.* |
| 10-03756 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/CBESSA, et al.* |
| 10-03757 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. SNS Global Custody B.V. a/k/a SNS Bank N.V., et al.* |
| 10-03758 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Fund Services (Cayman) Ltd. Ref Greenlake Arbitrage Fund Ltd., et al.* |
| 10-03764 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Pictet & Cie, et al.* |
| 10-03776 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis (Isle of Man) Nominees Ltd. a/k/a ABN AMRO Fund Services (Isle of Man) Nominees Ltd., et al.* |
| 10-03778 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Wall Street Securities SA, et al.* |
| 10-03780 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS AG New York, et al.* |
| 10-03782 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse (Bahamas), et al.* |
| 10-03783 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Atlantico (Bahamas), et al.* |
| 10-03786 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. SG Private Banking (Suisse) SA, et al.* |
| 10-03787 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Atlantico (Gibraltar), et al.* |
| 10-03788 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Merrill Lynch Bank (Suisse) SA, et al.* |
| 10-03790 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Zayed, et al.* |
| 10-03791 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Monte Paschi Ireland Ltd., et al.* |
| 10-03792 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ZCM Asset Holding Company (Bermuda) Limited, et al.* |
| 10-03793 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Nomura International PLC, et al.* |
| 10-03795 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Lombard Odier Darier Hentsch & Cie, et al.* |
| 10-03798 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Strina, et al.* |
| 10-03799 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Hambros Guernsey Nominees, et al.* |
| 10-03801 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ING Bank (Suisse) SA, et al.* |
| 10-03863 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Sumitomo Trust & Banking Co., LTD.* |

| Adv. Pro. No. | Case Name |
|---|---|
| 10-03864 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Natixis Private Banking International SA, et al.* |
| 10-03865 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Celfin Int'l Ltd., et al.* |
| 10-03867 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS Stichting Stroeve Global Custody, et al.* |
| 10-03868 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Kredietbank SA Luxembourgeoise, et al.* |
| 10-03869 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Six Sis AG/CH104026, et al.* |
| 10-03871 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Caceis Bank EX-IXIS IS, et al.* |
| 10-03873 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bordier & Cie, et al.* |
| 10-04087 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Royal Bank of Canada (Suisse), et al.* |
| 10-04088 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse (Luxembourg) SA, et al.* |
| 10-04089 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Inversis SA, et al.* |
| 10-04090 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Dexia BIL for Customer Account, et al.* |
| 10-04091 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Dexia Private Bank (Switzerland), et al.* |
| 10-04093 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Commercial Bank of Kuwait, et al.* |
| 10-04094 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Natexis Banques Populaires, et al.* |
| 10-04095 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Fund Services (Cayman) Limited, et al.* |
| 10-04096 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Di Desio E Della Brianza/Zenit Altern. Inv./Zenit Master, et al.* |
| 10-04097 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Nominees (IOM) Limited, et al.* |
| 10-04098 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. BNP Paribas Arbitrage SNC, et al.* |
| 10-04099 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. BNP Paribas Private Bank and Trust Cayman Ltd., et al.* |
| 10-04100 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Citivic Nominees Limited, et al.* |
| 10-04212 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Morgan Stanley AG, et al.* |
| 10-04236 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse Nominees, et al.* |
| 10-04238 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Hansard Europe Ltd., et al.* |
| 11-01467 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. BK Hapoalim/B M Tel Aviv, et al.* |
| 11-01242 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/Fortis Banque Luxembourg, et al.* |
| 11-01243 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Julius Baer and Co. Ltd., Zurich, et al.* |
| 11-01244 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Agricole (Suisse) SA a/k/a Banque du Credit Agricole (Suisse) SA, et al.* |
| 11-01249 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Schroder & Co. Bank AG, et al.* |
| 11-01250 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Luxembourg SA, et al.* |
| 11-01253 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/SWEDCLIENT/IAM, et al.* |
| 11-01254 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/AEB Lux a/k/a American Express Bank (London), et al.* |
| 11-01256 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque SCS Alliance SA, et al.* |
| 11-01257 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Mirabaud & Cie a/k/a Mirabaud & Cie Banquiers Prives, et al.* |
| 11-01258 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Fund Services (Ireland) Ltd., et al.* |
| 11-01259 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Barclays Bank (Suisse) SA, et al.* |

| Adv. Pro. No. | Case Name |
|---|---|
| 11-01260 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/NBK Kuwait a/k/a National Bank of Kuwait, et al.* |
| 11-01263 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Clearstream Banking SA, et al.* |
| 11-01460 | *Fairfield Sigma Ltd. (In Liquidation), et al. v. FS/LAB/AXA PM, et al.* |
| 11-01461 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Melrose Investments Ltd., et al.* |
| 11-01462 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Grand Cathay Securities (Hong Kong) Limited, et al.* |
| 11-01463 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Merrill Lynch International, et al.* |
| 11-01464 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Natixis f/k/a IXIS Corporate and Investment Bank, et al.* |
| 11-01467 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/BK Hapoalim/B M Tel Aviv, et al.* |
| 11-01470 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Barfield Nominees Limited, et al.* |
| 11-01486 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Korea Exchange Bank, et al.* |
| 11-01564 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank Nominees (Jersey) Limited, et al.* |
| 11-01565 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/ING Lux, et al.* |
| 11-01566 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/SG Private Banking (Lugano-Svizzera) SA, et al.* |
| 11-01567 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Global Fund Porvenir, et al.* |
| 11-01569 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/Banque Degroof Bruxelles, et al.* |
| 11-01571 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banc of America Securities LLC, et al.* |
| 11-01575 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Industriel et Commercial Singapore Branch, et al.* |
| 11-01576 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Multi-Strategy Fund Limited, et al.* |
| 11-01577 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Cathay Life Insurance Co. Ltd., et al.* |
| 11-01578 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. NYROY, et al.* |
| 11-01579 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. BNP Paribas Securities Nominees Ltd., et al.* |
| 11-01581 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Rahn & Bodmer Banquiers, et al.* |
| 11-01582 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Royal Bank of Canada (Asia) Limited, et al.* |
| 11-01584 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Societe Generale Bank & Trust (Luxembourg), et al.* |
| 11-01585 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque de Reescompte et de Placement, et al.* |
| 11-01586 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Swedbank, et al.* |
| 11-01587 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bie Bank & Trust Bahamas Ltd., et al.* |
| 11-01589 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. BNY AIS Nominees Ltd., et al.* |
| 11-01591 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. All Funds Bank, et al.* |
| 11-01592 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Cherwinka, et al.* |
| 11-01594 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/HSBC Guyerzeller Zurich, et al.* |
| 11-01595 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. KWI, et al.* |
| 11-01596 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Kefong Lee, et al.* |
| 11-01598 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque et Caisse D'epargne de L'Etat Lux, et al.* |
| 11-01599 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Eduardo Fernandez de Valderrama Murillo, et al.* |
| 11-01600 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/BBVA Zurich/Shares, et al.* |
| 11-01601 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse AG Nassau Branch Wealth Management, et al.* |
| 11-01604 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. PFPC Bank Limited, et al.* |

| Adv. Pro. No. | Case Name |
|---|---|
| 11-01607 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Melguizo, et al.* |
| 11-01610 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/Israel Discount Bank, Limited, Tel Aviv, et al.* |
| 11-01612 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Sarasin & Cie AG, et al.* |
| 11-01614 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. IDF Global Fund, et al.* |
| 11-01615 | *Fairfield Sigma Ltd. (In Liquidation), et al. v. Societe Europeenne de Banque S.A.* |
| 11-01616 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Woori Bank, et al.* |
| 11-01617 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis Bank SA/NV, et al.* |
| 11-01619 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/NBP Titres, et al.* |
| 11-01719 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Abu Dhabi Investment Authority et al.* |
| 11-01760 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Vontobel AG, et al.* |
| 11-02253 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Royal Bank of Canada a/k/a RBC Capital Markets Corporation, et al.* |
| 11-02336 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Naidot & Co., et al.* |
| 11-02392 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Lion Global Investors f/k/a Lion Fairfield Capital Management, et al.* |
| 11-02422 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis Global Custody Services N.V. n/k/a ABN AMRO, et al.* |
| 11-02440 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Sal. Oppenheim Jr. & Cie (Schweiz) AG a/k/a Bank Sal. Oppenheim Jr. & Cie, et al.* |
| 11-02530 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Avalon Absolute Return Funds PLC, et al.* |
| 11-02532 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Deltec Bank & Trust Limited, et al.* |
| 11-02534 | *Fairfield Sigma Ltd. (In Liquidation) et al. v. Simgest SpA et al.* |
| 11-02594 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Rothschild Trust (Schweiz) AG, et al.* |
| 11-02611 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Andorra Banc Agricol Reig SA, et al.* |
| 11-02612 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse Nominees (Guernsey) Limited, et al.* |
| 11-02613 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Societe Generale Bank & Trust S.A. (Luxembourg), et al.* |
| 11-02770 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Citigroup Global Markets Limited, et al.* |
| 11-02771 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fullerton Capital PTE, Ltd., f/k/a Goldtree Invest, et al.* |
| 11-02772 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. BankMed (Suisse) S.A. f/k/a Banque de la Mediterra, et al.* |
| 11-02787 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Agricole Titres, et al.* |
| 12-01119 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis Bank (Nederland) N.V., et al.* |
| 12-01122 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Maple Key Market Neutral Cayman Islands LP, et al.* |
| 12-01123 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. BANCA CARIGE SPA, et al.* |
| 12-01124 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Itau Europa International, et al.* |
| 12-01125 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Investec Bank (Switzerland) AG, et al.* |
| 12-01127 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse Nassau Branch Wealth Management a/k/a Credit Suisse Wealth Management Limited, et al.* |
| 12-01128 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Seoul Branch, Ltd., et al.* |
| 12-01131 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Rothschild & Cie Banque Paris, et al.* |

| Adv. Pro. No. | Case Name |
|---|---|
| 12-01132 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. RBC Dexia Investor Services Espana S.A.* |
| 12-01134 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. SEI Investments Trustee and Custodial Services (Ireland) Ltd. Nominee A/C 1, et al.* |
| 12-01135 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank of Ireland Nominees Limited, et al.* |
| 12-01136 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bred Banque Populaire, et al.* |
| 12-01140 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banca Cesare Ponti SPA, et al.* |
| 12-01142 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Citibank Korea Inc., et al.* |
| 12-01143 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Centre College, et al.* |
| 12-01144 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Hapoalim BM, London, et al.* |
| 12-01146 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Portobelo Advisors Inc., et al.* |
| 12-01147 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fair and Banque Degroof Luxembourg, S.A., et al.* |
| 12-01148 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banca Popolare Dell'Alto Adige Soc. Coop. Resp. Lim., et al.* |
| 12-01155 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Kiangsu Chekiang and Shanghai Residents (H.K.) Association, et al.* |
| 12-01158 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/Bank Leumi Israel, et al.* |
| 12-01162 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Delta S.P.A., et al.* |
| 12-01164 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Public Bank (Hong Kong) Limited, et al.* |
| 12-01187 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Popolare Di Verona E Novara Luxembourg S.A. n/k/a Banco Popolare Luxembourg S.A., et al.* |
| 12-01264 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Jared Trading Limited/BVI et al.* |
| 12-01265 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Barclays Bank SA Madrid, et al.* |
| 12-01267 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. TAIB Bank E.C., et al.* |
| 12-01270 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Securities (Panama) SA, et al.* |
| 12-01271 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Hontai Life Insurance Company Limited, et al.* |
| 12-01272 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Schroders Italy SIM SPA, et al.* |
| 12-01285 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banca Profilo SPA, et al.* |
| 12-01286 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco General SA Banca Privada, et al.* |
| 12-01287 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Patagonia (Uruguay) S.A.I.F.E., et al.* |
| 12-01288 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Cais Bank, et al.* |
| 12-01289 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Dreadnought Finance OY, et al.* |
| 12-01290 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC International Trustee Limited, et al.* |
| 12-01294 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Alok Sama, et al.* |
| 12-01295 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Sarasin & Cie a/k/a Bank Sarasin & Co., et al.* |
| 12-01298 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Don Chimango SA, et al.* |
| 12-01301 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Unicorp Bank & Trust Limited, et al.* |
| 12-01550 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Atlantic Security Bank, et al.* |
| 12-01551 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. BNP Paribas Espana f/k/a Fortis Bank (Espana), et al.* |
| 12-01555 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSH Nordbank Securities S.A., et al.* |

| Adv. Pro. No. | Case Name |
|---|---|
| 12-01556 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Somers Nominees (Far East) Limited List Parties, et al.* |
| 12-01567 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. First Gulf Bank, et al.* |
| 12-01568 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis Global Custody Services NV, et al.* |
| 12-01569 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/GSCO London, et al.* |
| 12-01571 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis Bank Cayman Limited n/k/a ABN AMRO Fund Services Bank (Cayman) Limited, et al.* |
| 12-01599 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Barclays Private Bank & Trust (Channel Islands) Limited, et al.* |
| 12-01600 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Hyposwiss Private Bank Geneve F/K/A Anglo Irish Bank (Suisse), S.A. et al.* |
| 12-01601 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Select Absolute Strategies SICAV, et al.* |
| 12-01716 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Essex 21 Limited, et al.* |
| 16-01214 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. RBC Investor Services Bank SA, et al.* |

## Appendix B

## Additional Counsel

### AKERMAN LLP

David W. Parham
(david.parham@akerman.com)

2001 Ross Avenue
Suite 2550
Dallas, TX 75201
(214) 720-4300

### AKERMAN LLP

Susan F. Balaschak
(susan.balaschak@akerman.com)

666 Fifth Avenue, 20th Floor
New York, NY 10103
(212) 880-3800

### ALLEN & OVERY LLP

Laura Hall
(laura.hall@allenovery.com)
Jonathan Cho
(jonathan.cho@allenovery.com)

1221 Avenue of the Americas
New York, NY 10020
(212) 610-6300

### ARNOLD & PORTER KAYE SCHOLER LLP

Kent Yalowitz
(kent.yalowitz@apks.com)
Daniel Bernstein
(daniel.bernstein@apks.com)

399 Park Avenue
New York, NY 10022
(212) 715-1000

**ARNOLD & PORTER KAYE SCHOLER LLP**

Scott B. Schreiber
(scott.schreiber@apks.com)
Rosa J. Evergreen
(rosa.evergreen@apks.com)

601 Massachusetts Ave. NW
Washington, DC 20001-3743
(202) 942-5000

**BAKER & MCKENZIE LLP**

Jacob Kaplan
(jacob.kaplan.@bakermckenzie.com)
L Andrew S. Riccio
(andrew.riccio@bakermckenzie.com)

452 Fifth Avenue
New York, NY 10018
(212) 626-4100

**BAST AMRON LLP**

Jeffrey P. Bast
(jbast@bastamron.com)

One Southeast Third Avenue
Suite 1400
Miami, FL 33131
(305) 379-7904

**BECKER, GLYNN, MUFFLY, CHASSIN &
HOSINSKI LLP**

Zeb Landsman
(zlandsman@beckerglynn.com)
Jordan Stern
(jstern@beckerglynn.com)

299 Park Avenue
New York, NY 10171
(212) 888-3033

**BEYS LISTON & MOBARGHA LLP**

Joshua D. Liston
(jliston@blmllp.com)

825 Third Avenue, 2nd Floor
New York, NY 10022
(646) 755-3600

**BOIES, SCHILLER & FLEXNER LLP**

Alan B. Vickery
(avickery@bsfllp.com)
Jack G. Stern
(jstern@bsfllp.com)

575 Lexington Avenue, 7th Floor
New York, NY 10022
(212) 446-2300

**BOND, SCHOENECK & KING, PLLC**

Brian J. Butler
(bbutler@bsk.com)
Sara C. Temes
(stemes@bsk.com)

One Lincoln Center
Syracuse, NY 13224
(315) 218-8000

**BUTZEL LONG, P.C.**

Joshua E. Abraham
(abraham@butzel.com)

477 Madison Avenue
Suite 1230
New York, NY 10022
(212) 818-1110

**CADWALADER, WICKERSHAM & TAFT
LLP**

Howard R. Hawkins, Jr.
(howard.hawkins@cwt.com)
Ellen M. Halstead
(ellen.halstead@cwt.com)

200 Liberty Street
New York, NY 10281
(212) 504-6000

**CAPLIN & DRYSDALE, CHARTERED**

James P. Wehner
(jwehner@capdale.com)

One Thomas Circle, 11th Floor
Washington, DC 20005
(202) 862-5075

**CHAFFETZ LINDSEY LLP**

Andreas A. Frischknecht
(a.frischknecht@chaffetzlindsey.com)
Erin E. Valentine
(e.valentine@chaffetzlindsey.com)

1700 Broadway, 33rd Floor
New York, NY 10019
(212) 257-6960

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

Lawrence B. Friedman
(lfriedman@cgsh.com)
Jeffrey A. Rosenthal
(jrosenthal@cgsh.com)
Carmine D. Boccuzzi, Jr.
(cboccuzzi@cgsh.com)
Breon S. Peace
(bpeace@cgsh.com)
Elizabeth Vicens
(evicens@cgsh.com)
Ari D. MacKinnon
(amackinnon@cgsh.com)
Erica Klipper
(eklipper@cgsh.com)

One Liberty Plaza
New York, NY 10006
(212) 225-2000

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

Nowell D. Bamberger (admitted pro hac vice)
(nbamberger@cgsh.com)

2000 Pennsylvania Ave. NW
Washington, DC 20002
(202) 974-1500

**CLIFFORD CHANCE US LLP**

Jeff E. Butler
(jeff.butler@cliffordchance.com)

31 West 52nd Street
New York, NY 10019
(212) 878-8000

**COHEN & GRESSER LLP**

Daniel H. Tabak
(dtabak@cohengresser.com)

800 Third Avenue
New York, NY 10022
(212) 957-7600

**COOLEY LLP**

Jonathan Bach
(jbach@cooley.com)

1114 Avenue of the Americas
New York, NY 10036
(212) 479-6000

**DAVIS & GILBERT LLP**

Joseph Cioffi
(jcioffi@dglaw.com)
Bruce Ginsberg
(bginsberg@dglaw.com)
James R. Serritella
(jserritella@dglaw.com)

1740 Broadway
New York, NY 10019
(212) 468-4800

**DAVIS POLK & WARDWELL LLP**

Elliot Moskowitz
(elliot.moskowitz@davispolk.com)
Andrew Ditchfield
(andrew.ditchfield@davispolk.com)

450 Lexington Avenue
New York, NY 10017
(212) 450-4000

**DEBEVOISE & PLIMPTON LLP**

Erica S. Weisgerber
(eweisgerber@debevoise.com)

919 Third Avenue
New York, NY 10022
(212) 909-6998

**DECHERT LLP**

Gary J. Mennitt
(gary.mennitt@dechert.com)
Daphne Ha
(daphne.ha@dechert.com)

1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500

**DENTONS US LLP**

Reid L. Ashinoff
(reid.ashinoff@dentons.com)
Justin N. Kattan
(justin.kattan@dentons.com)

1221 Avenue of the Americas
New York, NY 10020
(212) 768-6700

**DLA PIPER LLP (US)**

Christopher P. Hall
(Kip.Hall@dlapiper.com)
Rachel E. Albanese
(Rachel.Albanese@dlapiper.com)

1251 Avenue of the Americas
New York, NY 10020-1104
(212) 335-4500

**FLEMMING ZULACK WILLIAMSON ZAUDERER LLP**

John F. Zulack
(jzulack@fzwz.com)
Elizabeth A. O'Connor
(eoconnor@fzwz.com)

One Liberty Plaza
New York, NY 10006
(212) 412-9500

**FREJKA PLLC**

Elise S. Frejka
(efrejka@frejka.com)

205 East 42nd Street, 20th Floor
New York, NY 10017
(212) 641-0848

**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**

David M. Morris
(david.morris@friedfrank.com)

One New York Plaza
New York, NY 10004
(212) 859-8000

**FRIEDMAN KAPLAN SEILER & ADELMAN LLP**

Bruce S. Kaplan
(bkaplan@fklaw.com)
Christopher M. Colorado
(ccolorado@fklaw.com)
Robert J. Lack
(rlack@fklaw.com)
Alexander D. Levi
(alevi@fklaw.com)

7 Times Square
New York, NY 10036-6516
(212) 833-1100

**FROST BROWN TODD LLC**

Douglas L. Lutz
(dlutz@fbtlaw.com)

3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
(513) 651-6724

**GIBSON, DUNN & CRUTCHER LLP**

Marshall R. King[1]
(Mking@gibsondunn.com)

200 Park Avenue
New York, NY 10166
(212) 351-4000

**GILMARTIN, POSTER & SHAFTO LLP**

Michael C. Lambert
(mclambert@lawpost-nyc.com)

845 Third Avenue, 19th Floor
New York, NY 10022
(212) 425-3220

**GOODWIN PROCTER LLP**

William Weintraub
(wweintraub@goodwinlaw.com)
Gregory Fox
(gfox@goodwinlaw.com)

620 Eighth Avenue
New York, NY 10018
(212) 813-8800

---

[1]    The defendants represented by Marshall R. King at Gibson Dunn do not join in the arguments set forth in Section I.C.

**GREENBERG TRAURIG LLP**

Stephen Mendelsohn
(mendelsohns@gtlaw.com)
Ronald D. Lefton
(leftonr@gtlaw.com)

200 Park Avenue
New York, NY 10166
(212) 801-9200

**HARNIK LAW FIRM**

Stephen M. Harnik
(stephen@harnik.com)

623 Fifth Avenue, 24th Floor
New York, NY 10022
(212) 599-7575

**HERBERT SMITH FREEHILLS NEW YORK LLP[2]**

Scott S. Balber
(scott.balber@hsf.com)
Jonathan Cross
(jonathan.cross@hsf.com)

450 Lexington Avenue
New York, NY 10017
(917) 542-7600

**HOGAN LOVELLS US LLP**

Marc J. Gottridge
(marc.gottridge@hoganlovells.com)
Benjamin J.O. Lewis
(ben.lewis@hoganlovells.com)

875 Third Avenue
New York, NY 10022
(212) 918-3000

---

[2]    Due to administrative error, Bank Hapoalim Tel Aviv, B.M. ("Bank Hapoalim") was inadvertently included in Appendix B-1 to the Consolidated Brief in Support of Defendants' Motion to Dismiss filed on January 13, 2017, which indicated that the Liquidators have not alleged that Bank Hapoalim signed a Subscription Agreement.  The Liquidators are correct that they have alleged that Bank Hapoalim entered into one or more Subscription Agreements with the Funds (Opp. 11 n.9).

**HUGHES HUBBARD & REED LLP**

Christopher K. Kiplok
(chris.kiplok@hugheshubbard.com)
Jeffrey S. Margolin
(jeff.margolin@hugheshubbard.com)

One Battery Park Plaza
New York, NY 10004-1482
(212) 837-6000

**HUNTON & WILLIAMS LLP**

Michael P. Richman
(mrichman@hunton.com)

200 Park Avenue, 52nd Floor
New York, NY 10166
(212) 309-1015

**JENNER & BLOCK LLP**

Richard Levin
(rlevin@jenner.com)

919 Third Avenue
New York, NY 10022
(212) 891-1600

**KASOWITZ BENSON TORRES LLP**

David J. Mark
(dmark@kasowitz.com)

1633 Broadway
New York, NY 10019
(212) 506-1700

**KATTEN MUCHIN ROSENMAN LLP**

Anthony L. Paccione
(anthony.paccione@kattenlaw.com)
Mark T. Ciani
(mark.ciani@kattenlaw.com)

575 Madison Avenue
New York, NY 10022
(212) 940-8800

**KING & SPALDING LLP**

Richard A. Cirillo
(rcirillo@kslaw.com)

1185 Avenue of the Americas
New York, NY 10036
(212) 556-2100

**KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.**

Norris D. Wolff
(nwolff@kkwc.com)

551 Fifth Avenue, 18th Floor
New York, NY 10176
(212) 986-6000

**KOBRE & KIM LLP**

Jonathan D. Cogan
(jonathan.cogan@kobrekim.com)
Kimberly Perrotta Cole
(kimberly.cole@kobrekim.com)
D. Farrington Yates
(farrington.yates@kobrekim.com)

800 Third Avenue
New York, NY 10022
(212) 488-1200

**KRISS & FEUERSTEIN LLP**

Dwight Yellen
(dyellen@kandfllp.com)

360 Lexington Avenue, 12th Floor
New York, NY 10017
(212) 661-2900

**KRUZHKOV RUSSO PLLC**

Robert Sidorsky
(rsidorsky@kruzhkovrusso.com)

359 Fifth Avenue
Suite 7230
New York, NY 10018
(212) 363-2000

**LATHAM & WATKINS LLP**

Christopher R. Harris
(christpher.harris@lw.com)

885 Third Avenue
New York, NY 10022
(212) 906-1200

**LINKLATERS LLP**

Paul S. Hessler
(paul.hessler@linklaters.com)
Brenda D. DiLuigi
(brenda.diluigi@linklaters.com)

1345 Avenue of the Americas
New York, NY 10105
(212) 903-9080

**LITMAN, ASCHE AND GIOIELLA, LLP**

Richard M. Asche
(richardasche@lagnyc.com)

666 Fifth Avenue
New York, NY 10103
(212) 809-4500

**MAYER BROWN LLP**

Joaquin M. C De Baca
(jcdebaca@mayerbrown.com)
John M. Conlon
(jconlon@mayerbrown.com)

1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500

**MAYER BROWN LLP**

Fred W. Reinke
(freinke@mayerbrown.com)

1999 K Street NW
Washington, DC 20006
(202) 263-3359

**MCKOOL SMITH, PC**

Eric B. Halper
(ehalper@mckoolsmith.com)
Virginia I. Weber
(vweber@mckoolsmith.com)

One Bryant Park, 47th Floor
New York, NY 10036
(212) 402-9413

**MILBANK, TWEED, HADLEY & MCCLOY LLP**

Andrew M. Leblanc
(aleblanc@milbank.com)
Stacey J. Rappaport
(srappaport@milbank.com)
Alexander B. Lees
(alees@milbank.com)

28 Liberty Street
New York, NY 10006
(212) 530-5000

**MOSES & SINGER LLP**

Mark N. Parry
(mparry@mosessinger.com)

405 Lexington Avenue
New York, NY 10174
(212) 554-7876

**NORRIS, MCLAUGHLIN & MARCUS, PA**

Melissa A. Pena
(mapena@nmmlaw.com)

875 Third Avenue, 8th Floor
New York, NY 10022
(212) 808-0700

**O'MELVENY & MYERS LLP**

Pamela A. Miller
(pmiller@omm.com)
William J. Sushon
(wsushon@omm.com)
Daniel S. Shamah
(dshamah@omm.com)

7 Times Square
New York, NY 10036
(212) 326-2000

**OTTERBOURG, P.C.**

Richard G. Haddad
(rhaddad@otterbourg.com)

230 Park Avenue
New York, NY 10169-0075
(212) 661-9100

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

Eric Fishman
(eric.fishman@pillsburylaw.com)

1540 Broadway
New York, NY 10036
(212) 858-1000

**PROSKAUER ROSE LLP**

Gregg M. Mashberg
(gmashberg@proskauer.com)
Russell T. Gorkin
(rgorkin@proskauer.com)

11 Times Square
New York, NY 10036
(212) 969-3000

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Marc L. Greenwald
(marcgreenwald@quinnemanuel.com)
Eric M. Kay
(erickay@quinnemanuel.com)

51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

**REED SMITH LLP**

David M. Schlecker
(dschlecker@reedsmith.com)
James C. McCarroll
(jmccarroll@reedsmith.com)
John C. Scalzo
(jscalzo@reedsmith.com)

599 Lexington Avenue
New York, NY 10022
(212) 521-5400

**REISS+PREUSS LLP**

Jascha D. Preuss
(jpreuss@reisspreuss.com)
Erik M. Tikkanen
(etikkanen@reisspreuss.com)

200 W. 41st Street, 20th Fl.
New York, NY 10036
(646) 731-2775

**ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.**

Steven Eichel
(se@robinsonbrog.com)
Andrew B. Zinman
(abz@robinsonbrog.com)

875 Third Avenue
New York, NY 10022
(212) 603-6300

**ROPES & GRAY LLP**

Robert S. Fischler
(robert.fischler@ropesgray.com)
Martin J. Crisp
(martin.crisp@ropesgray.com)

1211 Avenue of the Americas
New York, NY 10036-8704
(212) 596-9000

**SCHEICHET & DAVIS, PC**

Victor P. Muskin
(victor@scheichetdavis.com)

767 Third Avenue, Suite 2400
New York, NY 10017
(212) 688-3200

**SHEARMAN & STERLING LLP**

Brian Polovoy
(BPolovoy@Shearman.com)
Randall Martin
(Randall.Martin@Shearman.com)

599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

**SHEPPARD MULLIN RICHTER &
HAMPTON, LLP**

Seong H. Kim (admitted pro hac vice)
(SHKim@sheppardmullin.com)

1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
(310) 228-6161

**SIDLEY AUSTIN LLP**

Alan M. Unger
(aunger@sidley.com)
Andrew P. Propps
(apropps@sidley.com)
Alex R. Rovira
(arovira@sidley.com)
Andrew D. Hart
(ahart@sidley.com)
Steven M. Bierman
(sbierman@sidley.com)

787 Seventh Avenue
New York, NY 10019
(212) 839-5300

**SULLIVAN & CROMWELL LLP**

Jeffrey T. Scott
(scottj@sullcrom.com)
Andrew J. Finn
(finna@sullcrom.com)

125 Broad Street
New York, NY 10004
(212) 558-4000

**SULLIVAN & CROMWELL LLP**

Diane L. McGimsey
(mcgimseyd@sullcrom.com)

1888 Century Park East
Los Angeles, CA 90067
(310) 712-6600

**TANNENBAUM HELPERN SYRACUSE &
HIRSCHTRITT LLP**

Ralph A. Siciliano
(Siciliano@thsh.com)
Richard W. Trotter
(Trotter@thsh.com)

900 Third Avenue
New York, NY 10022
(212) 508-6718

**THOMPSON HINE LLP**

Tammy P. Bieber
(tammy.bieber@thompsonhine.com)
Emily J. Mathieu
(emily.mathieu@thompsonhine.com)
Barry M. Kazan
(barry.kazan@thompsonhine.com)

335 Madison Avenue
12th Floor
New York, NY 10017
(212) 344-5680

**WACHTELL, LIPTON, ROSEN & KATZ**

Emil A. Kleinhaus
(eakleinhaus@wlrk.com)

51 West 52nd Street
New York, NY 10019
(212) 403-1000

**WILLKIE FARR & GALLAGHER LLP**

Cristina Quiñones-Betancourt
(cquinonesbetancourt@willkie.com)
Martin Klotz
(mklotz@willkie.com)

787 Seventh Avenue
New York, NY 10019
(212) 728-8000

**WILMER CULTER PICKERING HALE AND DORR LLP**

Andrea J. Robinson
(andrea.robinson@wilmerhale.com)
Charles C. Platt
(charles.platt@wilmerhale.com)
George W. Shuster, Jr.
(george.shuster@wilmerhale.com)

7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 937-7518

**WINSTON & STRAWN LLP**

Heather L. Kafele
(hkafele@winston.com)
Keith Palfin
(kpalfin@winston.com)

1700 K Street NW
Washington, D.C. 20006-3817
(202) 282-5000

**WOLLMUTH MAHER & DEUTSCH LLP**

Frederick R. Kessler
(fkessler@wmd-law.com)
Philip R. Schatz
(pschatz@wmd-law.com)
Fletcher W. Strong
(fstrong@wmd-law.com)

500 Fifth Avenue
New York, NY 10110
(212) 382-3300

**WUERSCH & GERING LLP**

Gregory F. Hauser
(gregory.hauser@wg-law.com)

100 Wall Street, 10th Floor
New York, NY 10005
(212) 509-5050